IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN S. MCNULTY, ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-16-2426 |
| ROBERT A. CASERO, JR., ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiffs John and Carolyn McNulty ("the McNultys") filed a thirteen-count Amended Complaint against Defendants Robert Casero and Catherine Mary Hattenburg ("the Caseros") for compensatory, punitive, and special damages, a declaratory judgment to resolve a boundary dispute between the parties, and actions to quiet title and for ejectment. ECF 10. On October 31, 2017, the Caseros filed a Motion to Compel Discovery, ECF 65 ("the Motion"). The McNultys responded on November 14, 2017, ECF 68 ("the Opposition"), but the Caseros did not reply. On January 4, 2018, this Court stayed this case, pending the outcome of mediation, and denied the Motion without prejudice. ECF 89. On October 15, 2019, this Court lifted the stay and granted the parties' request to reinstate the Motion. ECF 118. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated herein, the Caseros' Motion is granted.

I.     FACTUAL BACKGROUND

The McNultys and the Caseros are neighbors on Salt Lake Road, which is located along the Mason Dixon Line at the border of Harford County, Maryland and York County, Pennsylvania. ECF 10, ¶¶ 1-2. The McNultys' property is situated in York County, Pennsylvania. *Id.* ¶ 1. The Caseros' property lies within Harford County, Maryland. *Id.* ¶ 2.

At the center of the dispute is the Mason Dixon Line's location in relation to Salt Lake Road. Salt Lake Road runs east to west, parallel to the northern border of the Caseros' property and to the southern border of the McNultys' property. ECF 2-5. The McNultys allege that the southern border of their property "is coterminous with the long-recognized" location of the Mason-Dixon Line. *Id.* ¶ 23. The McNultys further allege that the "long-recognized" location of the Mason Dixon Line, and therefore the southern border of their property, is approximately ten feet south of Salt Lake Road. *Id.* ¶¶ 14-15. On April 1, 2015 the Caseros executed a "Confirmatory Deed" stating in part that the northern boundary of their property was "the southerly side of . . . the Mason Dixon Line." *Id.* ¶ 32. That Confirmatory Deed, however, indicates that the northern border of the Casero property, and therefore the Mason Dixon Line, "lies on and through" Salt Lake Road. ECF 18-4 at 1. The McNultys also allege that the Caseros built a driveway that encroaches on their strip of land (ten feet south of Salt Lake Road), and that, on two different occasions, the Caseros destroyed a fence on that land. ECF 10, ¶¶ 18-22.

Based on these alleged encroachments, the McNultys bring thirteen claims for relief: a request for declaratory judgment that they own the disputed land in fee simple (Count I); an order ejecting Defendants from the disputed portions of the McNulty Property (Count II); an award of all mesne profits Defendants retained during their possession of the disputed portion of the McNulty Property (Count III); an order quieting title to the disputed land (Count IV); in the alternative, an order declaring that the McNultys have adversely possessed the disputed lands in question (Count V); and claims for compensatory and punitive damages and attorneys' fees in tort, including trespass, trespass to chattel, conversion, two counts of continuing trespass (based on the fence removal and the driveway), two counts of continuing nuisance (based on the fence removal and the driveway), and slander of title. ECF 10 (Counts VI-XIII).

The McNultys initially filed their Complaint against the Caseros on June 28, 2016. ECF 1. On September 3, 2016, the parties submitted a Joint Status Report requesting a scheduling conference and asking the Court to "allow for an early motion for summary judgment, prior to discovery," but indicating the McNultys' desire to file an Amended Complaint. ECF 7, ¶¶ 4-5. The Court thereafter held a scheduling conference and issued a Scheduling Order setting both a November 2, 2016 deadline for the McNultys to amend their Complaint, and a November 16, 2016 deadline for the Caseros to file either a "motion to dismiss or an answer and motion for summary judgment." ECF 9. The Caseros filed a "Motion to Dismiss Amended Complaint and/or for Summary Judgment" on November 15, 2016. ECF 14. The McNultys filed a Cross Motion for Summary Judgment on December 5, 2016. ECF 17; ECF 18.

On January 5, 2017, United States District Judge J. Frederick Motz issued a Memorandum Opinion ("the Opinion") granting the McNultys' Cross-Motion for Summary Judgment, and denying the Caseros' Motion for Summary Judgment, "on the issue of liability." ECF 22-1 at 1. The Caseros moved for reconsideration of Judge Motz's Opinion, ECF 24, and to strike the Opinion, ECF 43. Judge Motz denied both motions. ECF 27 (denying the Motion for Reconsideration); ECF 54 (denying the Motion to Strike). Thereafter, the parties began engaging in discovery. Upon the McNultys' motion, ECF 46, ¶ 10, Judge Motz issued a ruling to "confirm that discovery shall relate to the claims for relief only." ECF 50.

Before the Court is the Caseros' Motion to Compel, ECF 65. The Caseros assert that, after receiving no correspondence from the McNultys' counsel,[1] they noted depositions for several individuals, including four of the McNultys' neighbors: George Gerst, Bernie Gerst, Jim Lewis,

---

[1] The McNultys' current counsel was not involved in this discovery dispute, since Mr. Moran did not enter his appearance until December 12, 2018. ECF 102.

and Kim Lewis (collectively, "the McNulty neighbors"). ECF 65, ¶¶ 1, 3. One of the McNultys' interrogatory responses listed these individuals as having "personal knowledge of material facts in this matter." ECF 65-2 at 2-3 (Plaintiff Carolyn McNulty's Objections and Responses to Defendant Robert A. Casero's First Set of Interrogatories). Later, however, counsel for the McNultys represented to the Caseros' counsel that the McNulty neighbors "do not have knowledge of damages and were inadvertently listed on the Interrogatory Responses." ECF 65-1 at 2 (email chain between counsel for both parties). The McNultys indicate that they have served supplemental interrogatory responses to correct this purportedly erroneous inclusion. ECF 68, ¶ 3. The Caseros, however, wish to depose the McNulty neighbors, and seek to compel the McNultys' counsel "to cooperate in scheduling depositions of the neighbors." ECF 65 at 3.

## II. LEGAL STANDARDS

Though the McNultys' claims invoke the Court's diversity jurisdiction, ECF 11, ¶¶ 1-6, the Court applies federal procedural rules, *see, e.g.*, *Chartis Prop. Cas. Co. v. Huguely*, 243 F. Supp. 3d 615, 622 (D. Md. 2017). Local Rule 104.7 and Federal Rule of Civil Procedure 37 require that counsel confer regarding discovery disputes and make a good faith effort to settle disputes without court intervention. Loc. R. 104.7 (D. Md. 2018); Fed. R. Civ. P. 37(a)(1). This Court will not contemplate discovery motions unless the moving party files a certificate either: (1) reciting the date, time, and place of the discovery conference between the parties, and the names of the participants therein, or (2) certifying that the parties attempted to hold a conference but were unsuccessful. Loc. R. 104.7. Additionally, Local Rule 104.8 provides, in relevant part:

> If a party who has propounded interrogatories . . . is dissatisfied with the response to them and has been unable to resolve informally . . . any disputes with the responding party, that party shall serve a motion to compel within thirty (30) days of the party's receipt of the response. . . . The parties shall serve motions and memoranda under L.R. 104.8 in accordance with Fed. R. Civ. P. 5(a) and shall not

4

> serve them through the Court's electronic filing system nor file with the Court notices of service of the motion or memoranda.

Loc. R. 104.8(a). Local Rule 104.8 also requires that the parties "hold [a] conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel." Loc. R. 104.8(b).

The party resisting discovery generally carries the burden to "clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules." *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005). Thus, because the McNultys assert that their neighbors should not be subpoenaed for depositions, they carry the burden to demonstrate why such depositions are outside the scope of discovery. *See id.*; *Nat'l Credit Union Ass'n v. First Union Capital Mkts. Corp.*, 189 F.R.D. 158, 161 (D. Md. 1999) (quoting *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984)); *see also Hake v. Carroll County*, No. WDQ-13-1312, 2014 WL 3974173, at *5 (D. Md. Aug. 14, 2014) (stating that the party opposing a motion to compel carried the burden "to establish that the information is not relevant, or that the discovery request should be denied").

## III. ANALYSIS

### A. Compliance with Local Rules

As an initial matter, the Court notes that Defendants' Motion to Compel fails to fully comply with this Court's rules governing discovery disputes. As discussed above, Local Rule 104.8 provides the procedure which "*shall be followed* in litigating motions to compel." Loc. R. 104.8(a) (emphasis added). First, should a requesting party receive responses to interrogatories or requests for production that are "dissatis[factory]," the requesting party "shall serve a motion to compel within thirty (30) days of the party's receipt of the response." *Id.* This does not mean that the motion must be filed with the Court within thirty days. Rather, the motion (and accompanying

memoranda) must be served upon the other party in accordance with Federal Rule of Civil Procedure 5(a). *Id.* Once the motion to compel is served upon the responding party, the responding party has fourteen (14) days to serve a response upon the moving party, and the moving party then has fourteen (14) days to serve a reply. *Id.*

Even after this, however, the parties are not entitled to file their pleadings with the Court. Rather, if service of the papers does not lead to a resolution of the dispute, then "counsel must hold the conference required by L.R. 104.7." R. 104.8(b) (emphasis added). Counsel must meet and confer with one another "and make sincere attempts to resolve the differences between them." R. 104.7; *see also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58, 365 (D. Md. 2008) (discussing the meet and confer requirement); Loc. R. App. A., Discovery Guideline 1.d ("Cooperation and communication . . . are an obligation of counsel."). If the parties again fail to reach an agreement, only then can the parties involve the Court in the dispute. *See* R. 104.8(c)(i); *see also Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 655 (D. Md. 1997) (reciting Local Rule 104.8 procedures). In addition to copies of the motion and relevant memoranda previously served between the parties, the moving party "shall file the certificate required by L.R. 104.7." R. 104.8(c)(i). That certificate must either: (1) recite the date, time, and place of the discovery conference between the parties, and the names of the participants therein, or (2) certify that the parties attempted to hold a conference but were unsuccessful. R. 104.7.

However, just because a party fails to comply with Local Rules 104.7 and 104.8 does not *per se* require dismissal of their motion to compel. *See Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 497 (D. Md. 2000) ("[A]n absolute rule requiring [dismissal] without first determining whether the opposing party would suffer any real prejudice if the motion is granted would be too harsh a construction of the local rule." (citing Fed. R. Civ. P. 1)); *see also Blind*

*Indus. & Servs. of Md. v. Route 40 Paintball Park*, No. WMN-11-3562, 2012 WL 4470273, at *1-2 (D. Md. Sept. 26, 2012).

Here, Defendants complied with Local Rule 104.7, as the required certificate is attached to their Motion. ECF 65 at 4. However, there is no indication that Defendants complied with the service procedures laid out in Rule 104.8. Given this case's unique procedural posture, and the fact that Plaintiffs consented to reinstating this Motion, ECF 116, the Court cannot find any prejudice to Plaintiffs in considering the Motion. Moving forward, the Court notes for both parties that these procedures "shall be followed" for any future motions to compel. R. 104.8(a).[2]

### B. Proper Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and lists several factors to consider regarding proportionality. Notably, the 2015 Amendments to Rule 26(b)(1) eliminated the previous language limiting discovery to information that was "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 Amendments. The Advisory Committee made clear that information remains discoverable even if it ultimately will not be admissible at trial; the only factors a court must consider are (1) whether the requested information is relevant to any party's claim or defense, and (2) whether, based on the enumerated factors, the requested information is proportional to the needs of the case. *Id.*; *see* R. 26(b)(1).

The McNultys assert, without explanation, that the McNulty neighbors "lack any information pertaining to damages or relief." ECF 68, ¶ 4. Accordingly, the McNultys argue,

---

[2] The Court recognizes that Judge Motz previously issued a standing order providing for an expedited discovery dispute procedure. ECF 40-2. However, this Court does not adopt that Order, and will refer the parties to the procedures described in the Local Rules for discovery disputes.

allowing depositions of these individuals "would be in contravention of the Court's prior order limiting discovery to claims for relief," and therefore outside the scope of discovery. *Id.* ¶¶ 2, 4. Before addressing the Caseros' argument that the McNulty neighbors "have information relevant to the case," ECF 65, ¶ 2, then, the Court must determine the appropriate scope of discovery, given Judge Motz's prior rulings.

1.  Judge Motz's January 5, 2017 Ruling on Liability

On January 5, 2017, Judge Motz issued an Opinion granting the McNultys' Cross Motion for Summary Judgment, and denying the Caseros' Motion for Summary Judgment, "on the issue of liability." ECF 22-1 at 1. The Opinion addresses the parties' arguments as to the "proper placement of the Mason-Dixon line." *Id.* at 1-2. After considering the case *Maryland v. West Virginia*, 217 U.S. 1 (1910), Judge Motz concluded that the Caseros' efforts to distinguish it were not "meaningful." *Id.* at 2. Judge Motz reasoned that "Maryland has recognized the originally surveyed Mason-Dixon Line for over 250 years, and it has recognized that Salt Lake Road falls within the jurisdiction of Pennsylvania." *Id.* The Opinion does not set out any other factual or legal findings. *See id.* at 1-2.

The Court recounts the Opinion with no current or future intent to reconsider, overturn, or vacate it. Rather, the Opinion is relevant to the instant discussion, because it informs what further discovery must occur. Considering its language, Judge Motz's Opinion establishes that the McNultys prevail on the issue of where the southern border of their property lies. Thus, when considering the McNultys' requests for a declaratory judgment, for the Court to quiet title, and for ejectment, the Caseros are "liable" in that their claims to title over the disputed portions of the McNulty are invalid. The McNultys own the disputed portions of land that lie south of Salt Lake Road. Just because the McNultys own the disputed lands, however, does not *ipso facto* establish

8

liability on each remaining tort claim. As discussed below, the parties did not provide Judge Motz sufficient undisputed facts to establish the Caseros' liability on each tort claim the McNultys assert.

2. Outstanding Liability Issues

Preliminarily, the Court notes that this suit – between citizens of Pennsylvania and Maryland – invokes this Court's diversity jurisdiction. ECF 10, ¶¶ 1-6. Now that the Court has determined that the disputed lands belong to the McNultys, and therefore lie within the State of Pennsylvania, the Court must apply Maryland's choice of law rules to determine whether Maryland or Pennsylvania law applies to the McNultys' state law tort claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

With respect to tort claims, Maryland courts typically follow the *lex doci delicti* rule. *Erie Ins. Exchange v. Heffernan*, 399 Md. 598, 620 (2007). This rule requires courts to apply the tort law of "the state where the wrong occurs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Thus, "where the events giving rise to a tort action occur in more than one State," Maryland courts must "apply the law of the State where the injury – the last event required to constitute the tort – occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615 (2006). Here, the McNultys allege that the fences the Caseros destroyed, and the driveway that the Caseros constructed, both caused harm on their land, ECF 10, ¶¶ 71-120, which this Court has found is located in Pennsylvania, ECF 22-1 at 1-2. The McNultys also allege that the Caseros' Confirmatory Deed creates a cloud over the McNultys' title to their Pennsylvania land. ECF 10, ¶¶ 121-27. Accordingly, Pennsylvania law appears to apply to the McNultys' tort claims.[3]

---

[3] If the parties disagree with the Court's conclusion as to the applicable law in this case, the Court will hear arguments on that issue in future dispositive motions. The Court accepts Pennsylvania law as applicable for the purposes of this Motion.

9

As previously noted, the McNultys bring thirteen claims for relief, ranging from a declaratory judgment claim to various claims in tort. ECF 10. Those tort claims include trespass, trespass to chattel, conversion, two counts of continuing trespass, two counts of continuing nuisance, and slander of title. *Id.* ¶¶ 71-127.

> i. *The Trespass Claim*

Under Pennsylvania law, a plaintiff need only demonstrate that the defendant intended to commit "physical entry upon the surface of the [plaintiff's] land" to establish liability for trespass. *E.g.*, *Jones v. Wagner*, 425 Pa. Super. 102, 109 (1993) (quoting W. PAGE KEETON, PROSSER & KEETON ON TORTS (5th ed. 1984)). The defendant must simply intend to be on the land in question; there is no requirement that he intend to trespass on another's land. *Kopka v. Bell Tel. Co. of Am.*, 371 Pa. 444, 450 (1952) (quoting Restatement (First) of Torts § 163 (Am. Law. Inst. 1934)). Finally, the plaintiff need not allege any harm to his land, for the harm "is not to the physical wellbeing of the land, but to the landowner's right to peaceably enjoy full, exclusive use of his property." *Jones*, 425 Pa. Super. at 102.

The McNultys allege that, in December, 2014, the Caseros came onto the McNultys' property and removed the replacement fence the McNultys erected on said property. ECF 10, ¶ 73. In their Motion to Dismiss and/or for Summary Judgment, the Caseros stated that "[i]n an effort to beautify their land, Defendants removed the old fence" on the McNulty property, but make no mention of the replacement fence. ECF 14-1 at 3-4. The McNultys latched on to this concession in their Cross Motion, relying on it to demonstrate that no genuine issue of material fact existed. ECF 18 at 24. However, it is well-settled law in this Circuit that, as a procedural matter, an attorney's unsworn statements in a summary judgment motion "do[] not constitute evidence." *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Because none of the parties'

exhibits attached to their cross motions conclusively establish that the Caseros trespassed onto the McNulty property – or that a fence ever existed on that land, for that matter – the Court cannot find that Judge Motz's Opinion established liability on this claim.

> ii. *The Trespass to Chattel and Conversion Claims*

Pennsylvania courts define conversion as "the deprivation of another's right of property in, or use of possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 365 Pa. Super. 481, 484 (1987) (citing *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451 (1964)). The defendant must intend only to exercise control over the chattel; there is no specific intent requirement. *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001). Trespass to chattel, on the other hand, requires that the defendant intend to either dispossess the plaintiff of the chattel, or use or intermeddle with another's chattel. *Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 708 (Pa. Super. Ct. 2005) (quoting Restatement (Second) of Torts § 217 (Am. Law. Inst. 1965)). Essentially, "[t]he difference is that conversion entails a more serious deprivation of the owner's rights such that an award of the full value of the property is appropriate." *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 599-600 (E.D. Pa. 2016) (quoting *Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc.*, No. 96-6318, 1999 WL 225887, at *3 (E.D. Pa. Apr. 16, 1999)).

Setting aside the fact that Judge Motz's Opinion does not indicate which cause of action the Caseros are liable under, conversion or trespass to chattel, the Opinion is still insufficient to establish the Caseros' liability, because it does not describe the factual basis upon which it rests. Further, as discussed with the McNultys' trespass claim, there were no facts before Judge Motz to show that the Caseros actually destroyed or otherwise dispossessed the McNultys of the fence. Even if said facts existed, the cross-motions contain no evidence that would allow a factfinder to

determine whether the Caseros' actions were so severe as to justify an award of the fence's full value under a conversion theory, or whether their actions caused only a slight harm as to justify recovery under a trespass to chattel theory.

### iii. The Continuing Trespass Claims

Pennsylvania courts adopt the First Restatement's approach to the continuing trespass doctrine. *See, e.g.*, *Sustrik v. Jones & Laughlin Steel Corp.*, 431 Pa. 324, 328 (1964); *Allegheny County v. Merrit Constr. Co.*, 309 Pa. Super. 1, 4 (1982). A continuing trespass exists where a defendant fails to "remove from land in the possession of another a structure, chattel or other thing which he has tortiously erected or placed on the land." *Merrit Constr.*, 309 Pa. Super. at 4 (quoting Restatement (First) of Torts § 161 cmt. b)). The Pennsylvania Supreme Court cautions courts to distinguish a continuing trespass from a trespass causing permanent change to the plaintiff's land: "The latter, while resulting in a continuing harm, does not subject the trespasser to liability for a continuing trespass." *Sustrik*, 431 Pa. at 328 (citing Restatement (First) of Torts § 162 cmt. d).

Here, the McNultys bring two continuing trespass claims: one for the Caseros' allegedly repeated actions in tearing down fences on the McNultys' property, ECF 10, ¶¶ 91-93, and the other for the Caseros' alleged actions in constructing and maintaining their driveway on a portion of the McNultys' property, *id.* ¶¶ 99-100. Regarding the first, assuming that the allegations state a proper claim for relief under a continuing trespass theory, Judge Motz's Opinion again lacks a factual basis for establishing any facts surrounding the Caseros' alleged destruction of the McNultys' fences. Regarding the second, Judge Motz's Opinion might have been supported by a sufficient factual basis for him to find that the Caseros' driveway trespasses upon the McNultys' property. However, the Opinion contains no language indicating that Judge Motz found this as an

12

undisputed fact. *See* ECF 22-1 at 1-2. Without such language, this Court is not willing to read a finding of liability for continuing trespass into the Opinion.

                *iv.*        *The Continuing Nuisance Claims*

Pennsylvania courts also follow the Second Restatement's definition of private nuisance claims. *See, e.g.*, *Butts v. Sw. Energy Prod. Co.*, No. 3:12-cv-1330, 2014 WL 3953155, at *3 & n.2 (M.D. Pa. Aug. 12, 2014) (citing *Waschak v. Moffat*, 379 Pa. 441, 448-49 (1954)). To prevail on a nuisance claim, the plaintiff must show that the defendant's unreasonable conduct, whether done intentionally or negligently, caused a "significant harm" to the plaintiff's "interest in the private use and enjoyment" of his land. *Kembel v. Schlegel*, 329 Pa. Super. 159, 166 (1984) (quoting Restatement (Second) of Torts §§ 821F, 822). A "significant harm" is a "harm of importance, involving more than slight inconvenience or petty annoyance." *Id.* (quoting Restatement (Second) of Torts § 821F cmt. c).

The McNultys, however, allege a continuing nuisance. In addition to establishing that the Caseros' conduct in removing the McNultys' fences, and in maintaining their driveway on the McNultys' property, is a nuisance, ECF 10, ¶¶ 106-08, 115-16, the McNultys must show that each nuisance results in a continuing, not permanent, harm, *see, e.g.*, *Russell v. Chesapeake Appalachia, LLC*, No. , 2018 WL 6804764, at *2-3 (M.D. Pa. Dec. 27, 2018).[4] To determine whether a nuisance results in a continuing or permanent harm, Pennsylvania courts consider three factors: "(1) the character of the structure or thing which produces the injury; (2) whether the consequences of the [nuisance] will continue indefinitely; and, (3) whether the past and future damages may be

---

[4] Whether the harm is continuing or permanent is relevant for statute of limitations purposes. *See* 42 Pa. Cons. Stat. § 5524(7) (2019) (applying a two-year statute of limitations on nuisance claims). If the harm is permanent, then the statute of limitations begins to run "at the time the nuisance was created." *Cassel-Hess v. Hoffer*, 44 A.3d 80, 88 (Pa. Super. Ct. 2012) (citing *Cass v. Pa. Co.*, 159 Pa. 273, 276 (1893) (per curiam)).

13

predictably ascertained." *Cassel-Hess v. Hoffer*, 44 A.3d 80, 87 (Pa. Super. Ct. 2012) (citations and internal quotations omitted). Reviewing the parties' cross-motions in this case, the few exhibits provided to Judge Motz are insufficient for Judge Motz to have made any factual findings regarding whether either of the Caseros' alleged actions are nuisances, and whether those actions inflict continuous harm upon the McNultys.

> v. *The Slander of Title Claim*

Slander of title, also known as "defamation of title" or "disparagement of title," is "the false and malicious representation of the title or quality of another's interest in goods or property." *Triester v. 191 Tenants Ass'n*, 272 Pa. Super. 271, 277 (1979) (citations omitted). Pennsylvania courts adopt the Second Restatement's formulation of the necessary elements: "(1) the statement is false; (2) the publisher either intends . . . or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity." *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 246 (2002) (citing Restatement (Second) of Torts § 623A); *see also* Restatement (Second) of Torts § 624 (applying the definition in § 623A to slander of title claims related to property rights in land).

Pennsylvania, however, adopts the Second Restatement's conditional privilege for individuals who claim an interest in another person's real property. *E.g.*, *Forman v. Cheltenham Nat'l Bank*, 348 Pa. Super. 559, 562 (1985). Under that privilege, the adverse claimant to real property may disparage another's interest in land if the rival claimant asserts "an inconsistent legally protected interest" of his own. Restatement (Second) of Torts § 647. Thus, the plaintiff must prove sufficient malice to justify a finding that the defendant abused this conditional

privilege. *Forman*, 348 Pa. Super. at 562. The Second Restatement explains when the conditional privilege is abused:

> The exception stated in § 647 deals with the conditional privilege of a rival claimant to disparage another's property by an honest assertion of his own claim, even though he has no reasonable ground for believing his claim to be valid. Since the privilege itself extends to an action based upon a reasonable belief, it is not abused when the publication is made without reasonable grounds for belief in its truth, but is abused only when the claimant does not believe honestly or in good faith believe that there is a substantial chance of his claim being sustained.

*Id.* (quoting Restatement (Second) of Torts § 650A).

As is evident here, Judge Motz's finding that the McNultys own the property that is disputed as a result of the Caseros' April, 2015 Confirmatory Deed is not enough to satisfy all of the prima facie elements of slander of title, nor was there sufficient evidence for the Court to determine whether the Caseros abused their conditional privilege. The case will therefore require more extensive discovery into the Caseros' mental state at the time they executed the Confirmatory Deed.[5]

        3.      <u>Outstanding Damages Issues</u>

The outstanding issues to be determined in this case do not end at the liability stage. To this point, the parties have agreed that discovery must occur on the issue of damages for each claim for relief. Thus, on the face of the McNultys' Complaint, discovery must occur to determine the value of the fences destroyed (if liability can be established) and the value of the land the Caseros encroach upon. The McNultys seek special damages under their slander of title claim, ECF 10, ¶ 127, so they must also prove that they "suffered a direct pecuniary loss" as a result of the Caseros executing their Confirmatory Deed. *E.g.*, *Menefee v. Columbia Broad. Sys., Inc.*, 458 Pa. 46, 53

---

[5] This, of course, assumes that the McNultys can prove that their slander of title claim comports with Pennsylvania's one-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5523(1) (2019); *Pro Golf Mfg.*, 570 Pa. at 247 (applying § 5523(1) to slander of title claims).

(1974) (quoting Restatement (First) of Torts introductory note to ch. 28). Discovery, however, will not be limited to only these monetary issues.

First, for each of the tort claims the McNultys bring, the McNultys ask for punitive damages. ECF 10, ¶¶ 71-127. Punitive damages are awarded to punish the defendant "for his outrageous conduct." *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 102 (1989) (citing Restatement (Second) of Torts § 908(1)). To determine whether such punishment is warranted, Pennsylvania courts consider three factors: "(1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." *Id.* (citing Restatement (Second) of Torts § 908(2)). In this analysis, "[t]he state of mind of the actor is vital. The act . . . must be intentional, reckless, or malicious." *Field v. Merriam*, 506 Pa. 383, 396 (1984); *see also Chambers v. Montgomery*, 411 Pa. 339, 344-45 (explaining that punitive damages are appropriate in cases in which the defendant's conduct is "malicious, wanton, reckless, willful, or oppressive" (internal quotations omitted) (quoting *Hughes v. Babcock*, 349 Pa. 475, 480 (1944))). Thus, in this case, discovery must occur into the Caseros' financial status, as well as their state of mind when they allegedly took down the fence, constructed their driveway, and executed their Confirmatory Deed. Whether the Caseros knew they were violating the McNultys' property rights, or whether they reasonably thought they owned valid title to the property in question, will necessarily be relevant to the Court in determining whether to award punitive damages.

Second, the McNultys seek an award of attorneys' fees for each claim for relief. ECF 10, ¶¶ 71-127. Generally, under Pennsylvania law, attorneys' fees are unrecoverable. *Slappo v. J's Dev. Assocs., Inc.*, 791 A.2d 409, 416 (Pa. Super. Ct. 2002). Indeed, "[o]nly in the rarest of circumstances" will the court award attorneys' fees to the prevailing party. *Gregory v. Harleysville Mut. Ins. Co.*, 374 Pa. Super. 33, 38 (1988). Those specific and limited circumstances are

statutorily prescribed. *See* 42 Pa. Cons. Stat. § 2503 (2019). As relevant here, to obtain an attorneys' fees award, the McNultys must demonstrate either that the Caseros engaged in "dilatory, obdurate or vexatious conduct during the pendency of the matter," § 2503(7), or that the Caseros' conduct "in commencing the matter or otherwise was arbitrary, vexatious, or in bad faith," § 2503(9).[6] These recovery provisions focus on the conduct of the parties *during* litigation, not the parties' conduct giving rise to the claim for relief. *See, e.g.*, *Slappo*, 791 A.2d at 416-17 (reversing the trial court's attorneys' fees award under § 2503(9) because the award appeared to be based on the conduct giving rise to the original trespass, not on any allegation that the losing party's "conduct during the litigation was arbitrary, vexatious, or in bad faith"); *Yeager v. Kavic*, 765 A.2d 812, 815 (Pa. Super. Ct. 2000) (discussing cases considering attorneys' fees awards under § 2503(7), all of which focus on the parties' conduct during litigation, and reversing a trial court's attorneys' fees award because the court "did not make a specific finding" that any party in the case engaged in "dilatory, obdurate or vexatious conduct"). To the extent the McNultys believe they can succeed on these claims for attorneys' fees, further discovery may be warranted.

As a final note, the McNultys bring an action of ejectment, seeking an order requiring the Caseros to remove the driveway that encroaches on the McNulty property. *Id.* ¶¶ 52-54. While Pennsylvania law generally treats ejectment actions as actions at law, "[u]nder some circumstances the action of ejection may be considered in the nature of an equitable action." *Maeran v. Springbrook Estates, Inc.*, Civ. No. 90-0889, 1991 WL 322608, at *3 (M.D. Pa. Oct. 25, 1991) (quoting *Angelcyk v. Angelcyk*, 367 Pa. 381, 387 (1951)). Further, equitable defenses can apply to

---

[6] Pennsylvania law does not provide for an attorneys' fees award as of right in common law actions for trespass, *see Slappo*, 791 A.2d at 416-17, nuisance, *Centolanza v. Lehigh Valley Dairies, Inc.*, 430 Pa. Super. 463, 469 (1993), and other common law tort claims, *see Pods Enters., LLC v. Almatis, Inc.*, Civ. No. 16-933, 2016 WL 7440276, at *3 (W.D. Pa. Dec. 27, 2016); *Prudential Ins. Co. of Am. v. Hewitt-Jackson*, No 2:13-cv-799, 2014 WL 640260, at *4 (W.D. Pa. Feb. 19, 2014).

ejectment actions. *Id.* (quoting *Kardos v. Morris*, 470 Pa. 337, 342 (1977)). The Court notes that the Caseros's Answer to the Amended Complaint references various equitable defenses, ECF 55, ¶¶ 2, 13, and thus there may be discovery needed to address those defenses, to the extent that discovery into the matters discussed above do not allow for full consideration of the issue.

### C. Defendants' Motion to Compel

The Court returns to the ultimate issue the Caseros' Motion presents: whether they can compel the McNultys' counsel to attend depositions of the McNultys' neighbors. ECF 65. The McNultys make a conclusory assertion that the neighbors "lack information pertaining to damages or information within the scope of discovery in this case." ECF 68, ¶ 2; *see also id.* ¶ 4. The McNultys also argue that the Motion should be denied because the inclusion of the neighbors in Plaintiff Carolyn McNultys' Responses to Interrogatories, ECF 65-2 at 3, was "inadvertent[]" and has since been remedied, ECF 68, ¶ 3.

Both arguments are unpersuasive. Based on the large amount of discovery that needs to take place in this case, the Court finds that the McNulty neighbors' deposition testimony is relevant both as to the McNultys' claims and as to the Caseros' defenses in this case. As a matter of common sense, the McNulty neighbors will be able to corroborate the McNultys' allegations that fences once existed on their property. In addition, according to the original Interrogatories response, two of the neighbors "are likely to have information concerning the butterflies and wildlife along the McNulty fence," which is relevant to damages. ECF 65-2 at 3. Plaintiffs have not cited to, nor could this Court find, any case law that limits a litigant's ability to subpoena a non-party's testimony simply because the adverse litigant has amended an Interrogatory response to remove that non-party from its response. Indeed, it is well settled that the scope of discovery permitted under the subpoena rules mirrors the scope of discovery allowed under Rule 26(b). *Cook*

*v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) (explaining that the factors set forth in Rule 45(c) "are co-extensive with the general rules governing all discovery that are set forth in Rule 26"); *Bierman Family Farm, LLC v. United Farm Family Ins. Co.*, No. ADC-17-0004, 2017 WL 3311206, at *2 (D. Md. Aug. 2, 2017). The McNulty neighbors' testimony, as discussed above, is relevant under Rule 26(b)(1). Because the McNultys make no argument that deposing the McNulty neighbors is disproportionate to the needs of this case, the Court finds that their testimony is within the scope of discovery.[7]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel, ECF 68, is GRANTED. A separate Order is filed herewith.

Dated: October 24, 2019

/s/
Stephanie A. Gallagher
United States District Judge

---

[7] Even if the McNulty neighbors' testimony were irrelevant, the Court notes that the McNultys would not have standing to challenge the subpoenas issued to the neighbors, since the McNultys do not argue that the information their neighbors have is privileged. *See United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (per curiam) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.").