# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN S. MCNULTY, ET AL., | * |
| Plaintiffs, | * |
| v. | * Civil Case No. SAG-16-2426 |
| ROBERT A. CASERO, JR., ET AL., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs John and Carolyn McNulty ("the McNultys") filed a thirteen-count Amended Complaint against Defendants Robert Casero and Catherine Mary Hattenburg ("the Caseros") for compensatory, punitive, and special damages, a declaratory judgment to resolve a boundary dispute between the parties, and actions to quiet title and for ejectment. ECF 10. On December 4, 2017, the Caseros filed a Motion to Exclude the expert testimony of one of the McNultys' experts, William C. Harvey II, pursuant to *Daubert*. ECF 76 ("the Motion"). On January 4, 2018, this Court stayed this case, pending the outcome of mediation, and denied the Motion without prejudice. ECF 89. On October 15, 2019, this Court lifted the stay and granted the parties' request to reinstate the Motion. ECF 118. The McNultys filed an Opposition, ECF 127, and the Caseros filed a Reply, ECF 132. The Court held a hearing on the Motion on January 10, 2020, ECF 141, and received supplemental briefings from the parties on January 27, 2020, ECF 143 (the Caseros' supplemental brief); ECF 144 (the McNultys' supplemental brief). After reviewing all of the briefing, and having considered all of the testimony presented at the hearing, the Court will grant in part, and deny in part, the Caseros' Motion.

**I.      FACTUAL BACKGROUND**

Both the parties and the Court are well-versed in the underlying facts of the case, and so the Court will discuss only those relevant to the instant Motion.[1] The McNultys proffer the expert testimony of Mr. William C. Harvey, II ("Mr. Harvey") for the purposes of establishing damages. Mr. Harvey has over forty years of experience in commercial and residential real estate appraisal and consulting. ECF 76-1 at 32 (Mr. Harvey's expert report). He has been published in the area of real estate valuation five times. *Id.* During the past five years, he has testified as an expert on appraisal matters in twenty-four cases, as well as in the United States House of Representatives. *Id.* at 2-6, 32-33. He has been the President of his own real estate appraisal business since 1986, and is a member of myriad real estate appraisal professional organizations. *Id.* at 29-30.

Mr. Harvey begins with a baseline valuation of the McNulty property as of April 24, 2014, valuing the land with current improvements at $260,000, and at $160,000 without improvements. ECF 76-1 at 20-21. The Caseros do not object to this valuation. ECF 76 at 4. Mr. Harvey explains that in cases where the taking of land is temporary, the trespassing party "essentially takes a leasehold in the property," making the proper measure of damages the fair rental value of the property. ECF 76-1 at 21. Mr. Harvey assumed that the Caseros' driveway encroached on 0.1 acres of the McNultys' land. *Id.* Mr. Harvey then determined that the rental value of the land was $22.54 per month, basing this calculation on the $160,000 fair market value of the McNultys' land in an unimproved state. *Id.* Because, at the time of the report, the encroachments went on for forty-five months, he opines that the total amount of damages for the driveway's encroachment ($22.54 per month over forty-five months, discounted at a 5% annual safe rate) is $923. *Id.*

---

[1] For an extended discussion of the underlying facts, *see McNulty v. Casero*, No. SAG-16-2426, 2019 WL 5454900, at *1-2 (D. Md. Oct. 24, 2019).

2

Mr. Harvey then notes that the McNultys unsuccessfully attempted to obtain an extended coverage title insurance policy, "or special endorsement," related to the defects in title resulting from the Caseros' occupation and trespass on their land. *Id.*; *see also* ECF 76-2 at 92:13-93:18. Mr. Harvey opines that the proper measure of damages for this harm is to calculate the fair market value of the impairment caused by those title defects "that cannot be mitigated through an extended coverage policy or special endorsement." ECF 76-1 at 22. Mr. Harvey did not describe any instance in which the McNultys suffered particular damages because of their inability to obtain additional title insurance, such as a lost sale of the property upon the buyer's learning of the Caseros' claims, repeated failed efforts by the McNultys to sell the land, or some other pecuniary loss the McNultys suffered as a result of having no title insurance. *See id.* at 21-22.

To determine the diminution in the McNultys' land's value because of the Caseros' conduct, Mr. Harvey "developed a variation of the federal rule for condemnation appraisal using the income capitalization approach, cost to cure method, and before-and-after method." *Id.* at 21. Under this method, Mr. Harvey began his damages calculation by first computing the fair market rental value of the entire McNulty property based on its $260,000 improved and unimpaired value, which he determined to be $2,166.67 per month. *Id.* at 22. Because of the McNultys' inability to get additional title insurance, Mr. Harvey opined that it was appropriate to multiply the entire property's fair market value by forty-five (the number of months, at the time of the report, that the Caseros had encroached on the 0.1 acres). *Id.* He then discounted that figure at a five percent annual safe rate, for a resulting total of $88,737. *Id.*

The total diminution in market value estimation was not yet complete, however. *Id.* Mr. Harvey then estimated that the cost to restore the destroyed fencing and to remove the infringing portions of the driveway would be $4,816. *Id.* He added that $4,816 figure to the earlier $88,737

estimation, and determined that the total diminution to the fair market value of the McNultys' land is approximately $94,000. *Id.* In other words, the Caseros' occupation of the 0.1 acre of land, coupled with their adverse claim of title to that land, in Mr. Harvey's opinion, caused the fair market value of the McNultys' land to decrease from $260,000, to $166,000. *Id.* at 23.

## II. LEGAL STANDARDS

"The admissibility of expert testimony in a federal court sitting in diversity jurisdiction is controlled by federal law." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986). Under the Federal Rules of Evidence, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To be admissible, Rule 702 requires the proffered expert testimony to be (1) helpful to the jury in understanding the evidence or determining a fact at issue; (2) "based on sufficient facts or data;" (3) "the product of reliable principles and methods;" and (4) the product of a reliable application of those principles and methods to the facts of the case." *Id.*

Additionally, Rule 702 implicitly "imposes a special gatekeeping obligation on the trial judge" to ensure that an expert opinion is both relevant and reliable. *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017); *see also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). In *Kumho Tire Co. v. Carmichael*, the Supreme Court explictly extended this responsibility to expert opinions outside of the scientific realm. *See* 526 U.S. 137, 141-42 (1999). As to the first aspect of this gatekeeping role, generally, expert testimony is relevant if the expert's opinion relates to some issue in the case. *See Daubert*, 509 U.S. at 591. It requires some valid connection between the expert's opinion and the pertinent inquiry at hand. *See id.* at 592.

The Court's inquiry into the reliability of an expert's testimony is "flexible," and focuses on "the principles and methodology employed by the expert." *Id.* at 594-95; *see also Kumho Tire*

*Co.*, 526 U.S. at 141 (noting that *Daubert*'s enumerated factors for reliability is "neither necessarily nor exclusively applies to all experts or in every case"). In determining whether proferred testimony is sufficiently reliable, "the court has broad latitude to consider whatever factors bearing on validity the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *see also Nease*, 848 F.3d at 230. Neither *Daubert* nor the Federal Rules of Evidence obligate a trial court "to admit opinion evidence that is [based merely on] the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). Rather, "[r]eliability is to be determined by the 'principles and methodology' employed by the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001). Indeed, "[t]he Court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury." *Goyal v. Thermage, Inc.*, Civil No. WDQ-08-0020, 2011 WL 691185, at *3 n.8 (D. Md. Feb. 18, 2011) (quoting *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004)).

**III. ANALYSIS**

The Caseros seek to exclude Mr. Harvey's testimony because his appraisal methodology is unreliable, and the opinions he offers are irrelevant. The Caseros have not argued that Mr. Harvey is otherwise unqualified to be an expert, but even assuming that were at issue, after reading Mr. Harvey's Report, ECF 76-1, and listening to him testify at the hearing as to his qualifications, experience, and recent expert testimony in other cases, the Court is satisfied that he qualifies as an expert in real estate appraisal. Though Mr. Harvey's report lists only one ultimate conclusion, *see* ECF 76-1 at 5, in the Court's view, Mr. Harvey proffers three separate opinions. Each is addressed in turn.

### A. Mr. Harvey's $923 valuation of damages arising from the Caseros' trespass on the 0.1-acre portion of the McNultys' land is admissible.

First, Mr. Harvey opines that the damages that the McNultys suffered as a direct result of the Caseros' trespass on the McNultys' land are $923. As an initial matter, this opinion is helpful to the jury, as it will enable them to determine one of the major questions of fact that will be disputed at trial – the damages to the McNultys. Upon review of Mr. Harvey's expert report and his deposition transcript, the Court is further satisfied that he based that opinion upon sufficient facts and data.

Further, Mr. Harvey's opinion is relevant to the McNultys' trespass claim. As this Court discussed in its October, 2019 Memorandum Opinion, *see McNulty*, 2019 WL 5454900, at *5, Pennsylvania law applies in this diversity action. The Pennsylvania Superior Court's decision in *Slappo v. J's Development Associates, Inc.* is instructive here. In that property boundary dispute, the defendant company trespassed on the plaintiff's land and conducted both construction and excavation work. 791 A.2d 409, 413 (Pa. Super. 2002). In analyzing the issue of damages on appeal, the court stated that the proper measure of damages for the injury to the land – assuming that the land was reparable – would be the lesser of (1) the cost to repair, or (2) the market value of the damaged property before it suffered damage. *Id.* at 415. Here, the McNultys could present evidence of either the cost it would take to repair their land to its original state before the Caseros constructed the driveway, or of the market value of the land that was occupied. Mr. Harvey's opinion that the McNultys suffered $923 in damages based on the Caseros' occupation of the tenth of an acre is therefore relevant.

The methods by which Mr. Harvey reaches his $923 estimation are also reliable. He opines that the best way to estimate the damage the McNultys suffered from the Caseros' occupation is by calculating the tenth of an acre's fair rental value over the term of occupation. Mr. Harvey

references both learned real estate treatises and case law from the United States Court of Appeals for the Fourth Circuit as the sources, and justification, of his chosen methods. ECF 76-1 at 21-22. He has also testified at the hearing that the treatises he cited are ones typically relied upon in the field of real estate appraisal. Indeed, the Court is persuaded that the Caseros' trespass and occupation upon the McNultys' land via a driveway is sufficiently analogous to a governmental takings situation. In 1948, in the seminal case *Kimball Laundry Co. v. United States*, the Supreme Court held that where the government temporarily takes property, the proper measure of compensation is the fair market rental value of the land seized for the duration of the seizure. 338 U.S. 1, 6-7 (1948). The means of the Caseros' occupation of the one-tenth acre at issue is nearly identical. Were a jury to award full judgment in the McNultys' favor, the land in question would return to their possession, but they would still be entitled to recover damages for the time they could not occupy their land. Mr. Harvey's methods are therefore reliable in this regard. *See* ECF 76-1 at 21-22. Upon a review of Mr. Harvey's calculations, as fully set out in his report, the Court finds that he reliably applied the methods accepted in his field to calculate the one-tenth acre's rental value. Therefore, the Caseros' motion to disqualify him as to his opinion regarding the $923 in damages suffered as a result of the Caseros' alleged trespass will be denied.

### B. Mr. Harvey's opinion as to the diminution in value to the McNultys' entire property due to the Caseros' trespass and adverse claim of title is irrelevant, and must be excluded.

Next, Mr. Harvey opines that the cloud placed upon the McNultys' title as a result of the Caseros' trespass and occupation has resulted in approximately $94,000 in damages. ECF 76-1 at 5, 22-23. Mr. Harvey's calculation rests on the premise that the McNultys are entitled to damages for their inability to obtain supplemental title insurance after the Caseros lodged their claims of title to the disputed portions of the McNulty property. *See id.* at 22-23. The Caseros argue that

7

Mr. Harvey's opinion improperly calculates damages based on the law applicable to this case. The McNultys, at the hearing and in their briefing, have argued that Mr. Harvey's methodology is sound, primarily because the Caseros' claim to title over the tenth of an acre, by nature, impaired the marketability of the entire parcel. The Court agrees with the Caseros.

Mr. Harvey's opinion regarding the diminution in value to the McNultys' property is irrelevant to the McNultys' trespass claims, for it lacks a sufficient connection to the facts alleged in the McNultys' Amended Complaint. Whatever the fair market value of the McNultys' property is at the time judgment is rendered will be of no help to the jury. As previously stated, the proper measure of damages for the trespass itself is the lesser of the cost to repair, or the value of the land occupied. If the Caseros are found liable for trespass based on the location of the driveway, the McNultys will be made whole through their requests for damages, ejectment, and an order quieting title. Venturing into whatever the McNultys' property is worth with the offending driveway on their land is unnecessary. The McNultys are correct that the Fourth Circuit approves of calculating the diminution in market value of an entire parcel of property when there is a *permanent* taking of a portion of that parcel. ECF 127 at 15-16 (citing *Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Balt. & Harford Ctys.*, 701 F. App'x 221, 227-28 (4th Cir. 2017)). But again, here, the trespass is only temporary. As Mr. Harvey recognized during the hearing, once the Caseros' alleged trespass is removed, the McNultys' title will be free of encumbrances, returning the McNultys' property to its full $260,000 fair market value. Any $94,000 award for a supposed previous diminution in value would only result in a windfall to the McNultys *vis-à-vis* their trespass claim.

Nor is Mr. Harvey's opinion relevant to the McNultys' slander of title claim. In *Pro Golf Magazine v. Tribune Review Newspaper Co.*, 570 Pa. 242, 246 (2002), the Pennsylvania Supreme

Court adopted the Second Restatement of Torts's formulation of the elements of a slander of title claim. Per section 633 of the Second Restatement of Torts, damages for slander of title are limited to pecuniary losses that result "directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement," and those that result from "the expense of measures reasonably necessary to counteract the publication." *See also, e.g.*, *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 409 (E.D. Pa. 1983) (affirming that, under Pennsylvania law, plaintiff must "plead and prove pecuniary loss" with specificity); *Menefee v. Columbia Broad. Sys., Inc.*, 458 Pa. 46, 54 (1974) (same). Comments (c), (d), (f), (g), and (h) to section 633 of the Second Restatement contemplate measurable, particularized pecuniary losses that result from an inability to sell property to specific (or sometimes unknown) purchasers because of the libelous publication.

Mr. Harvey's opinion, however, is based only on the premise that the McNultys could not obtain title insurance. *See* ECF 76-1 at 21-22. Mr. Harvey's opinion is not based upon any specific instances of the McNultys losing a potential sale of their property because of the Caseros' claim. *See* ECF 10, ¶¶ 121-27. Nor is Mr. Harveys' opinion grounded in any facts showing that the McNultys attempted, but were unable, to sell their land during the relevant time period, or that the inability to obtain title insurance otherwise caused them pecuniary harm. Since Pennsylvania law requires a particularized pecuniary loss, Mr. Harvey's opinion about the hypothetical impact of the Caseros' claim of title over the one-tenth acre upon the fair market value of the McNultys' entire property is irrelevant to the McNultys' causes of action. Mr. Harvey's opinion as to the $94,000 diminution to the McNultys' entire property will therefore be excluded.

**C. There is no factual basis provided for Mr. Harvey's opinion as to the cost of replacing the allegedly torn down fences.**

Lastly, Mr. Harvey's third opinion appears to be that the cost of removing the driveway and replacing the allegedly torn down fences is $4,816. ECF 76-1 at 22. He provides no factual basis for this opinion, and no explanation of the methods he used to reach that figure. This opinion therefore fails to meet the requirements of Rule 702, and must also be excluded.

**IV. CONCLUSION**

For the reasons set forth above, the Caseros' Motion to Exclude, ECF 76, is GRANTED IN PART and DENIED IN PART. Mr. Harvey will be permitted to testify as to the value of the land trespassed upon for the duration of the trespass, but his expert opinions as to all other issues will be excluded. A separate implementing Order follows.

Dated: February 25, 2020 /s/
Stephanie A. Gallagher
United States District Judge