**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Northern Division*

|  |  |  |
|---|---|---|
| **JOHN S. MCNULTY**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: SAG-16-2426 |
| **ROBERT A. CASERO, JR.**, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Pending is Defendants Robert Casero, Jr. and Catherine Mary Hattenburg's Motion to Dismiss or, in the Alternative, Motion to Strike Expert William C. Harvey II and Thomas E. Farcht, Jr.'s Opinions, ECF No. 77. The defendants request that the Court dismiss the complaint or strike plaintiffs' expert opinions because plaintiffs' former counsel raised unfounded objections during the expert depositions and improperly instructed the experts not to answer questions. Plaintiffs have filed an opposition, ECF No. 128. Defendants have filed a reply, ECF No. 133. A hearing is not necessary. *See* Loc. R. 105.6.

Dismissal is an extraordinary sanction not warranted under the circumstances of this case.[1] Additionally, striking the opinions is not the proper remedy because both parties' counsel were at fault during the deposition and plaintiffs have new counsel. Further, Judge Gallagher issued an order curtailing the scope of Mr. Harvey's testimony, and the plaintiffs have filed a second

---

[1] Judge Gallagher referred this motion to me for resolution. ECF No. 135. Because the sanction of dismissal would be case-dispositive, if I believed that dismissal was warranted, I would not have the authority to order it directly and would have to provide a report and recommendation to Judge Gallagher. *See* 28 U.S.C. § 636(b)(1).

amended complaint, significantly narrowing the relief they seek. Under these circumstances, the appropriate relief would be to reopen the expert depositions for the limited purpose of obtaining discovery on the second amended complaint if the defendants can show good cause for reopening. For the reasons stated below, the motion is denied.

**Background**

On June 28, 2016, John McNulty and Carolyn McNulty sued their neighbors to the south, Robert Casero, Jr. and Catherine Mary Hattenburg, asserting claims in equity to resolve the parties' disagreement about where the boundary dividing their properties lay, to remove Mr. Casero and Mrs. Hattenburg from the disputed land, and to recover damages for what the McNultys believe is a continuing trespass on the southernmost strip of their property. ECF No. 1. The boundary line at issue corresponds with the Mason-Dixon line. Plaintiffs also brought tort claims of trespass, nuisance, conversion, and slander of title, seeking damages and equitable relief. *Id.*

On January 5, 2017, Judge Motz addressed the placement of the Mason-Dixon line and ruled in favor of plaintiffs on the parties' pre-discovery dispositive motions. ECF Nos. 22-1, 23. The parties then engaged in discovery, and Judge Motz issued a clarifying memorandum, in which he "confirm[ed] that discovery shall relate to the claims for relief only." ECF No. 50. On November 7, 2017, defense counsel took the depositions of the plaintiffs' expert in surveying real estate, Thomas Farcht, and the plaintiffs' expert in real estate appraisal, William Harvey. Plaintiffs were represented by their former counsel who has now been replaced. On December 4, 2017, the defendants filed the pending motion to dismiss or, in the alternative, motion to strike the plaintiffs' experts' opinions.

After the case was reassigned to Judge Gallagher in 2019, she informed the parties that Judge Motz's order on summary judgment "establishe[d] that the McNultys prevail on the issue

of where the southern border of their property lies" and that "[t]he McNultys own the disputed portions of land that lie south of Salt Lake Road." *McNulty v. Casero*, No. SAG-16-2426, 2019 WL 5454900, at *5 (D. Md. Oct. 24, 2019). She also observed that Judge Motz's memorandum did not resolve "the Caseros' liability on each tort claim the McNultys assert"—trespass, trespass to chattel, conversion, continuing trespass, continuing nuisance, and slander of title. *Id.* at *5–8. Additionally, Judge Gallagher stated that the parties could seek discovery on damages, as well as discovery relevant to the equitable defenses the defendants raised in their answer to the amended complaint. *Id.* at *9.

At the time of Mr. Harvey's and Mr. Farcht's depositions, however, the parties' understanding of the scope of discovery was informed only by Judge Motz's memoranda.

On February 25, 2020, Judge Gallagher granted in part the defendants' *Daubert* motion to exclude Mr. Harvey from testifying, ruling that Mr. Harvey could testify only "as to the $923 in damages the McNultys suffered as a result of the Caseros' alleged occupation of the McNultys' land." ECF Nos. 147, 148.  On May 11, 2020, the McNultys filed a second amended complaint. ECF No. 161.  Plaintiffs retained ten of their original claims, but significantly, they no longer seek damages.  They now seek only declaratory and equitable relief, including a declaratory judgment, an order permanently ejecting the defendants and ordering them to remove their driveway from the plaintiffs' land, an order quieting title, and other permanent injunctive relief.  Second Am. Compl. ¶¶ 50, 54, 58, 68, 74, 82, 103, 112, 120, 127.

Still pending is the defendants' motion to dismiss the McNultys' complaint with prejudice or, alternatively, to strike the experts' opinions as sanctions for plaintiffs' counsel's conduct during the expert depositions.

**Parties' Arguments**

Defendants argue that during the expert depositions, the plaintiffs' former counsel "repeatedly instructed the witnesses not to answer questions," but lacked a basis for those instructions. Defs.' Mot. 2. They argue that "[t]he persistent, but flawed, position of Plaintiffs' counsel was that the questions did not pertain to damages and remedies"—the parameter Judge Motz had set for discovery—, *id.* at 9, even though the questions did indeed "relate[] to damages or other remedies," *id.* at 3. Defendants assert that the plaintiffs' counsel's repeated conduct "deprived [the defendants] of meaningful discovery regarding damages and remedies," *id.* at 8, and they ask for case-dispositive sanctions or, alternatively, an order striking the experts' opinions to remedy the perceived harm, *id.* at 15–16.

Plaintiffs counter that, even if the defendants intended for their deposition questions to elicit discoverable information, "Defendants' questions, as framed, will not elicit the information . . . that the Defendants say that [they] need"; nor do they "ask[] for any information related to the elements of the tort causes of action." Pls.' Opp'n 3–4. In their view, "Defendants' questions, as phrased can only be reasonably interpreted to seek information that is now irrelevant because Judge Motz's prior Orders have now decided where the Mason-Dixon line is to be 'placed.'" *Id.* at 4. They insist that "the vast majority of [the] questions" at issue "at least *sound* like the questioner is trying to re-open an issue that Judge Motz had closed, or at least by defining, had limited to 'claims for relief.'" *Id.* at 5. Plaintiffs note that counsel "offered to allow the witness to respond to questions if the questioner could explain how the question ' . . . goes to damages or relief. . . . .'" *Id.* at 6 (quoting Farcht Dep. 6:13–16, ECF No. 77-2).

As a remedy for the alleged misconduct of plaintiffs' counsel and his direction to the witnesses not to answer questions, defendants ask the Court to dismiss the case or strike the experts' opinions. Defs.' Mot. 3–4, 15.

## **The Applicable Law**

Pursuant to Rule 26(b)(1), parties to civil litigation may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Asking "questions clearly beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1)" is "presumptively improper." Discovery Guidelines 6(d), Loc. R. App'x A (D. Md.).

During a deposition, counsel may make objections "to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition" by stating the objection "concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2); *see also* Discovery Guideline 6(b), Loc. R. App'x A (D. Md.) ("[I]t is presumptively improper for an attorney to make objections which are not consistent with Fed. R. Civ. P. 30(c)(2)."). "Guideline 6(b) of Appendix A to our Local Rules . . . provides that objections should be stated so as to avoid coaching the deponent and 'to minimize interruptions in the questioning . . . .'" *Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. ELH-09-1893, 2012 WL 273718, at *6 (D. Md. Jan. 27, 2012) (quoting Discovery Guidelines 6(b)). The objection will "be noted on the record," although it does not prevent the witness's testimony from proceeding. Fed. R. Civ. P. 30(c)(2). Rather, "the testimony is taken subject to any objection." *Id.*

"It is generally improper to instruct a witness not to answer questions during depositions." *Millennium*, 2012 WL 273718, at *6 (citing Fed. R. Civ. P. 26(b)(1); *Ralston Purina Co. v.*

*McFarland,* 550 F.2d 967, 973 (4th Cir. 1977)); Discovery Guideline 6(d). Rule 30 provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to end or limit a deposition] under Rule 30(d)(3)."[2] Fed. R. Civ. P. 30(c)(2); *see Millennium*, 2012 WL 273718, at *6 (discussing Rule 30(c)(2)).

Rule 37 generally governs sanctions for failure to make disclosures or cooperate in discovery. *See* Fed. R. Civ. P. 37. In their motion, the defendants do not cite the rule under which the sanctions of dismissal of the case and striking the experts' opinions are available, although they do seek attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(5). In their reply, they rely on the Court's inherent authority to manage the docket. *See* Defs.' Reply 4.

"Courts . . . have the inherent power to dismiss a case 'when a party deceives [the] court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process.'" *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 124 (4th Cir. 2019) (quoting *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (citation omitted)). Additionally, Rule 37(b)(2) provides for various sanctions, including dismissal and an order "prohibiting the disobedient party . . . from introducing designated matters in evidence," for failure to obey a discovery order, and Rule 41(b) provides for dismissal as a sanction for failure to prosecute or to follow the Federal Rules or a Court order. Fed. R. Civ. P. 37(b)(2)(A)(v), 41(b).

Before imposing dismissal as a sanction, the Court considers four factors, which vary—but not significantly—depending on whether it acts pursuant to its inherent authority, Rule

---

[2] Rule 30(d)(3) states that "a party may move to terminate or limit [a deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3).

37(b)(2), or Rule 41(b).  Under its inherent authority, the Court considers "the degree of culpability of the wrongdoer; the prejudice to the judicial process and the victim caused by the misconduct; the availability of other adequate sanctions; and the public interest." *Beach Mart*, 784 F. App'x at 124 (quoting *Projects Mgmt. Co.*, 734 F.3d at 373–74 (citation omitted)).  Under Rule 37(b), the Court considers "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.* (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)); *see also Griffin v. Wright Med. Tech., Inc.*, No. DKC-18-1959, 2020 WL 92208, at *2–3 (D. Md. Jan. 8, 2020).  Similarly, under Rule 41(b), the Court considers "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Griffin*, 2020 WL 92208, at *3 (quoting *O'Briant v. GAF Corp.*, No. ELH-18-2457, 2019 WL 5625761, at *5 (D. Md. Oct. 31, 2019) (quoting *Hillig v. Comm'r of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990))).  "[T]he [c]ourt will combine the two tests in determining if dismissal is appropriate under Rules 37[ ] and 41[ ] because the legal standards for dismissal under both rules are virtually the same." *Mackin v. Charles Schwab & Co.*, No. DKC-16-3923, 2019 WL 2058788, at *2 (D. Md. May 9, 2019) (quoting *Lance v. Megabus Ne., LLC*, No. PWG-16-3459, 2017 WL 3480800, at *2 (D. Md. Aug. 14, 2017)).

## Discussion

This dispute focuses on the conduct of plaintiffs' counsel during the depositions of plaintiffs' expert witnesses, William C. Harvey II and Thomas E. Farcht, Jr.  The deposition

transcripts are replete with interruptions by plaintiffs' counsel to lodge objections and instruct the witnesses not to answer. Although it is generally inappropriate to instruct a witness not to answer questions during a deposition, it would be appropriate if the discovery sought were in violation of a "limitation ordered by the court." *See* Fed. R. Civ. P. 30(c)(2).[3] It is apparent from the transcripts and the filings that the parties were attempting to interpret, to their respective advantages, the limitation ordered by Judge Motz that discovery "shall relate to the claims for relief only." For plaintiffs, counsel was trying to limit the questions to information related to his clients' claims for damages and equitable relief. *E.g.*, Farcht Dep. 9:11–17 ("The court has limited discovery, including depositions, to issues of damages and relief. I asked you if you could please explain how that question relates to damages and relief. You've refused to do so. And so I'm going to instruct my client not to answer until you explain how that relates to damages and relief satisfactorily."). For defendants, counsel was attempting to elicit information that could establish an appropriate amount of damages (or show that no damages were appropriated) and show his clients acted in good faith. *E.g.*, *id.* at 10:4–7 (defense counsel arguing that he was seeking information about "[h]ow much land is covered, is supposedly being trespassed upon . . . . Plus, there is an issue of malice. Knowledge and intent and scienter.").

Defendants insist that their counsel's questions were intended to elicit information relevant to claims for relief and that plaintiffs' counsel had no basis on which to instruct the witnesses not to answer. Although that may be true for some questions, it does appear that several questions were aimed at challenging Judge Motz's ruling against them on liability. During Mr. Farcht's deposition, defense counsel asked a number of questions about the Mason-Dixon line and where

---

[3] The other two instances in which a party "may instruct a deponent not to answer" are "when necessary to preserve a privilege" and "to present a motion [to end or limit a deposition] under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Neither of these circumstances is at issue here.

8

it fell with regard to the parties' properties. *E.g.*, Farcht Dep. 5:10–11, 14:11, 16:6–7, 22:17–19, 32:16–17 ("Does the McNulty property line call to the Mason-Dixon line?" "Do you know what the Mason-Dixon line is?" "[C]an you please point out which line refers to the Mason-Dixon line?" "And so when you went out into the field and you did your survey, you found Monument 37 and 38, and you drew a straight line between the two . . . ?" "[H]ow much land do you believe the McNultys own below the actual Mason-Dixon line?"). Other statements of defense counsel during the Farcht deposition made clear that he was seeking information pertaining to the location of the Mason-Dixon line, notwithstanding Judge Motz's order limiting discovery to claims for relief. *See id.* at 57:21–58:7 ("I need to know which [Mason-Dixon line] that is [that divides the parties' properties]. I need to know which one that is. . . . The court order doesn't say that. The court opinion doesn't say that. The court opinion only says that the deacon's line case applies in this case. . . .").[4]

In response to questions apparently aimed at challenging Judge Motz's ruling on liability, plaintiffs' former counsel objected that they "[went] to liability," in violation of "three court orders, related to discovery, . . . limiting discovery to issues of damages and relief." Farcht Dep. 6:10–13; *see id.* at 56:5–8 (instructing witness not to answer question that "[went] to liability" because "the court has already entered summary judgment on liability in favor of the McNultys"); *id.* at 60:13–18 (instructing witness not to answer question that "[went] to liability" because "the

---

[4] Defendants' written arguments in other court filings further demonstrate that the discovery they sought encompassed information necessary to establish the location of the Mason-Dixon line. Notably, in the defendants' motion to compel, filed after Judge Motz had denied both the defendants' motion for reconsideration of his order on liability, ECF No. 27, and their motion to strike his order denying reconsideration, ECF No. 54, the defendants "note[d] that they disagree with the Court's orders regarding liability." Defs.' Mot. to Compel 2, ECF No. 81. In that same submission, the defendants insisted that "for purposes of this case, damages and other relief must be determined based on where the 'originally surveyed Mason Dixon line' is." *Id.* at 3–4.

9

court has already decided that"); *see also, e.g.*, *id.* at 8:16–17, 25:5–6, 28:11–12, 35:11–12, 49:8–9, 50:12–13, 53:14–15; 55:11–12, 62:5–6, 63:6–7, 12–13, 65:16–17, 66:4–5, 72:19–20, 73:2–3 (instructing witness not to answer question that "[went] to liability").[5] Reasonable minds can debate whether some questions sought information about liability, claims for relief, or both, but it is clear that plaintiffs' former counsel – even if incorrect at times – was attempting to enforce a limitation imposed by the Court.

In *Millennium*, 2012 WL 273718, a similar issue arose regarding deposition testimony. There, "the Insurer Defendants complain[ed] that, at [Plaintiffs' rebuttal expert] Mr. Chatfield's deposition, plaintiffs' counsel '. . . instruct[ed] Mr. Chatfield not to answer without asserting that any privilege applies, thus allowing patently evasive answers to stand unchallenged, and halting appropriate probing into the new opinions that were inappropriately offered as rebuttal.'" *Id.* at *2 (quoting motion to strike deposition testimony). The defendants argued that "plaintiffs' counsel engaged in 'repeated unwarranted and improper interruptions of [defense counsel's] line of questioning,' which 'clearly influenced the witness' and "prevented adequate inquiries into the issue of Millennium's gas supplier.'" *Id.* (quoting Defs.' Mem.). They asked the Court to "preclud[e] Mr. Chatfield's testimony on the subject.'" *Id.* (quoting Defs.' Mem.).

Judge Hollander reviewed the deposition transcript and observed that, "[a]lthough the questioning by defense counsel was not abusive in tone, and he was undoubtedly frustrated by

---

[5] Similar objections and disagreement occurred during Harvey's deposition. For example, defense counsel asked him questions about the defendants' "conduct . . . to exercise dominion or control over [the land at issue]," how the defendants' "conduct impaired the McNultys' use of the property," where the fence was located with regard to the property line, and "the prior land owner['s] . . . access to . . Salt Lake Road." Harvey Dep. 23:18–24:19, 25:15–17, 31:16–18, 45:8–9, 74:11–13, 76:17–18, 107:2–4, ECF No. 77-1. Plaintiffs' former counsel repeatedly objected that these questions also "[went] to liability." *Id.* at 24:6–8, 20, 25:9–19, 31:19–21, 45:10, 74:14–15, 76:19–21, 107:5–12.

repeated interruptions, his line of inquiry persisted after Mr. Chatfield had answered several questions regarding Alinta's status as a supplier." *Id.* at *7. She concluded that "counsel for both sides veered from the Local Rules" but, given that "neither side was prejudiced, . . . no sanctions [we]re warranted." *Id.*

Here, counsel for both sides were at fault during the depositions. Most of plaintiffs' counsel's objections were attempts to enforce Judge Motz's limitation of discovery to claims for relief, but many of the objections were argumentative, in violation of Fed. R. Civ. P. 30(c)(2) and Discovery Guideline 6(b). As to some questions, counsel should have objected and allowed the witness to answer subject to the objection. It does not appear that he made much, if any, effort to "minimize interruptions in the questioning." Discovery Guidelines 6(b); *see Millennium*, 2012 WL 273718, at *6. For the defendants, their counsel's questions toed a fine line between relitigating the issue of liability and seeking information relevant to claims for relief.[6] At times, counsel attempted to ask questions that plainly went to liability, and he "repeatedly ask[ed] the same or substantially identical question[s]," after the witnesses had answered fully, in violation of Discovery Guideline 6(c). Although each counsel's actions may have been motivated by a desire to zealously represent his client's position, neither counsel handled the disagreement over the scope of questioning appropriately. *E.g.*, Farcht Dep. 5:10–10:16; 57:9–60:12. In sum, the attorneys failed to comply with their "obligation to cooperate in planning and conducting discovery to tailor the discovery to ensure that it meets the[] objectives [of this Court's Discovery Guidelines]." Discovery Guidelines 1(a); *see also Mackin v. Charles Schwab & Co.*, No. DKC-16-3923, 2018 WL 741697, at *1 (D. Md. Feb. 7, 2018) ("The parties are expected to engage

---

[6] Now, with the benefit of Judge Gallagher's opinion, it is clear that liability is still at issue for the torts such as trespass, *see McNulty*, 2019 WL 5454900, at *5–8, but at the time of the depositions, Judge Motz simply had stated that discovery was limited to "claims for relief," ECF No. 50.

cooperatively in a continuous exchange of information during discovery consistent with the federal rules and without further court intervention." (citing 8 Charles Allan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 2001 (3d ed. 2017))).

Dismissal is an extraordinary sanction that "may not be imposed except in the most compelling circumstances," and it is not warranted under the facts of this case. *See Griffin v. Wright Med. Tech., Inc.*, No. DKC-18-1959, 2020 WL 92208, at *2 (D. Md. Jan. 8, 2020).

> "While the power to dismiss clearly lies with the district courts, it is appropriately exercised only with restraint. 'Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits.' " *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978) (citation omitted). Therefore, only "the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, [should] result in the extreme sanction of dismissal or judgment by default." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.,* 872 F.2d 88, 92 (4th Cir. 1989).

*Id.* at *3 (quoting *O'Briant v. GAF Corp.*, No. ELH-18-2457, 2019 WL 5625761, at *5 (D. Md. Oct. 31, 2019)). Here, the plaintiffs had no personal responsibility for their former counsel's conduct. Indeed, that relationship has ended, and the plaintiffs retained new counsel. And, although counsel violated the Court's Discovery Guidelines, there is no evidence of bad faith. Moreover, defense counsel was not without fault. Certainly, this kind of conduct should be deterred, but dismissing a case in which counsel no longer is involved, or even striking the experts' testimony in the case, would not affect former counsel, let alone deter him. If sanctions were appropriate, lesser sanctions directed at counsel, rather than the plaintiffs, would be equally, if not more, effective. And, as for prejudice, Judge Gallagher already has limited Mr. Harvey's testimony. Further, it appears that the majority, if not all, of the testimony to which counsel objected went to damages, which the plaintiffs no longer seek. Accordingly, case-dispositive sanctions are not warranted under the Court's inherent authority, Rule 37(b)(2), or Rule 41(b). *See Beach Mart*, 784 F. App'x at 124; *Griffin*, 2020 WL 92208, at *3; *see also Millennium*, 2012 WL

273718, at *6. Further, in light of defense counsel's conduct during the depositions, the sanction of striking the plaintiffs' experts' opinions is not justified. *See Millennium*, 2012 WL 273718, at *6; Discovery Guidelines 1(a), (6)(b), (c).

As for the defendants' request for attorneys' fees pursuant to Rule 37(a)(5), the Court must grant attorneys' fees under that rule, after giving the party against whom fees are sought the opportunity to be heard, when it grants a motion "for an Order Compelling Disclosure or Discovery." Fed. R. Civ. P. 37(a). But defendants have not filed a motion for the Court to compel the disclosure of any information that they were prevented from obtaining during the deposition. And, because counsel for both parties were uncooperative and violated the Court's Discovery Guidelines at times during the depositions, an award of attorneys' fees pursuant to Rule 37(b)(2)(C) for failure to comply with a Court order would be unjust. *See* Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

Finally, the landscape of this case has changed since the expert depositions were taken in November 2017. Judge Gallagher's October 24, 2019 opinion has provided further clarification on the scope of discovery. Plaintiffs have filed a second amended complaint, eliminating three of their claims, and more significantly, seeking only declaratory and equitable relief, including a declaratory judgment, an order permanently ejecting the defendants and ordering them to remove their driveway from the plaintiffs' land, an order quieting title, and other permanent injunctive relief. Second Am. Compl. ¶¶ 50, 54, 58, 68, 74, 82, 103, 112, 120, 127. Money damages are no longer at issue. And, Mr. Harvey may only testify "as to the $923 in damages the McNultys

suffered as a result of the Caseros' alleged occupation of the McNultys' land." Feb. 25, 2020 Order. To the extent the defendants can identify areas of questioning that might elicit testimony relevant to the pending claims and defenses that they could not obtain as a result of plaintiffs' counsel's conduct during the 2017 depositions, the defendants may seek leave to reopen the depositions after the parties meet and confer regarding whether the depositions should be reopened for the limited purpose of conducting discovery relevant to the second amended complaint.

## **ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 20th day of May, 2020, hereby ORDERED that the defendants' Motion to Dismiss or, in the Alternative, Motion to Strike Expert William C. Harvey II and Thomas E. Farcht, Jr.'s Opinions, ECF No. 77, IS DENIED.

/S/
Deborah L. Boardman
United States Magistrate Judge

lyb