## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN S. MCNULTY, *et al.*,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-16-2426** |
| | * | |
| **ROBERT A. CASERO, JR., *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiffs John and Carolyn McNulty ("Plaintiffs") filed a thirteen-count Complaint against Defendants Robert Casero and Catherine Mary Hattenburg ("Defendants") on June 28, 2016. ECF 1. On May 11, 2020, Plaintiffs filed a Second Amended Complaint, ECF 161, with the Court's leave, *see* ECF 160. Defendants have now filed a Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction. ECF 163, 163-1 (collectively, "the Motion"). Plaintiffs have opposed, ECF 173-1, and Defendants replied, ECF 174. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion will be denied.

### I.    FACTUAL BACKGROUND

Only a brief recitation of the salient facts is necessary. Plaintiffs reside in York County, Pennsylvania, and Defendants reside in Harford County, Maryland. ECF 161, ¶¶ 1-2 (Second Am. Compl.). The southern boundary of Plaintiffs' property, and the northern boundary of Defendants' property, is the Mason-Dixon Line. *Id.* ¶¶ 11-15, 28-32. For almost four years now, the parties have disputed exactly where the Mason-Dixon Line lies, as it relates to their properties. *See id.*

Plaintiffs' original Complaint contained thirteen claims for relief, seeking an award of compensatory, punitive, and special damages, an award of reasonable attorneys' fees, a declaratory judgment to resolve a boundary dispute between the parties, and actions to quiet title and for ejectment.  ECF 1, ¶¶ 31-116.  The Complaint did not specify, in its *ad damnum* clause or elsewhere, a specific amount of damages sought, other than a general allegation that Plaintiffs would be entitled to a total award "in excess of $75,000."  *Id.* ¶ 6.  Defendants answered the Complaint, ECF 4, but the litigation was largely guided by an Amended Complaint filed shortly thereafter, ECF 10.[1]

On February 25, 2020, this Court granted, in part, Defendants' Motion to Exclude the expert testimony of one of Plaintiffs' proposed experts, William C. Harvey, III.  ECF 147; *see* 2020 WL 902547 (D. Md. Feb. 25, 2020).  As relevant here, the Court granted the motion to exclude, to the extent that Plaintiffs sought to elicit testimony from Mr. Harvey that Plaintiffs suffered $94,000 in damages due to a diminution in value to their land.  *Id.* at *4.  Such a calculation, the Court concluded, was not relevant to Plaintiffs' trespass claims.  *Id.*  Nor, this Court explained, was the calculation relevant to Plaintiffs' slander of title claim, largely because Mr. Harvey did not rely on any evidence from Plaintiffs that they attempted to sell their land during the relevant time period.  *Id.*  Because there was no evidence of any potential pecuniary loss, this Court reasoned, the governing Pennsylvania law barred Mr. Harvey's testimony.  *Id.*  Plaintiffs' claims for punitive damages and for attorneys' fees, however, remained pending.

Subsequent to this decision, Plaintiffs filed, with this Court's leave, a Second Amended Complaint.  *See* ECF 161.  The Second Amended Complaint removes two of Plaintiffs' previously asserted claims, and wholly removes all claims for damages and attorneys' fees from

---

[1] For an extensive discussion of this case's procedural posture, see ECF 170.

2

the remaining claims. *Id.* ¶¶ 41-127.  Plaintiffs now only request declaratory, injunctive, and other equitable relief, to remove the Defendants' adverse claim of title to the disputed land, and to enjoin Defendants from exercising dominion and control over that land in the future.  *See id.* Defendants answered, ECF 162, and then filed the instant Motion, ECF 163.

## II.    LEGAL STANDARDS

Defendants' Motion to Dismiss contends, pursuant to Federal Rule of Civil Procedure 12(b)(1), that this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. Plaintiffs brought this suit in federal court, instead of state court, on the basis of diversity jurisdiction, which exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the litigation is between citizens of different states.  28 U.S.C. § 1332(a)(1).  Challenges to the Court's subject matter jurisdiction may be raised at any stage in the litigation, and if the Court determines that it lacks subject matter jurisdiction, it "must dismiss" the case.  Fed. R. Civ. P. 12(h)(3); *see, e.g.*, *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  When challenged, the burden rests with Plaintiffs, as "the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist."  *Lovern*, 190 F.3d at 654.  If "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence."  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).  In ruling on such a challenge, this Court may also consider evidence outside of the pleadings.  *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  While the plaintiff bears the burden of proving that a court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.*

III.     **ANALYSIS**

Defendants' Motion asserts that because the Second Amended Complaint contains no damages claims, but only claims for injunctive and declaratory relief, Plaintiffs can no longer satisfy the amount in controversy requirement, therefore requiring the Court to dismiss the case for lack of subject matter jurisdiction.   ECF 163-1 at 4-5.   Defendants' Reply echoes this sentiment, and focuses largely on the fact that the filing of the Second Amended Complaint nullifies both Plaintiffs' Complaint and their Amended Complaint.   ECF 174 at 1-3.   Defendants argue that the original Complaint should accordingly be given no consideration at this stage. ECF 174 at 1-3.   The Court agrees with Defendants that, if diversity jurisdiction were determined by the current state of the pleadings, Plaintiffs' Second Amended Complaint would fail to establish Plaintiffs' entitlement to a damages award in excess of $75,000.   But, as explained below, this is not the governing analytical framework.

Plaintiffs correctly cite the longstanding legal principle that the Court's subject matter jurisdiction is unaffected by subsequent events that occur during the course of litigation.   *See, e.g.*, *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.").   As the Supreme Court later reaffirmed, it is a "well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of [the statutory minimum]."   *Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970); *accord Porsche Cars N. Am., Inc. v. Porsche.Net*, 302 F.3d 248, 255-56 (4th Cir. 2002).   This is because the presence of diversity jurisdiction is generally determined at the time of filing. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004); *see also, e.g.*, *Gardner v. AMF*

4

*Bowling Ctrs., Inc.*, 271 F. Supp. 2d 732, 733 (D. Md. 2003) (rejecting the notion that a plaintiff's amended complaint, reducing the claimed damages to $74,999.99, deprived the court of subject matter jurisdiction, because "[d]iversity jurisdiction is determined as of the date the suit is filed").

In *Shanaghan v. Cahill*, a case that neither party cites, the Fourth Circuit considered an appeal of a district court's order dismissing a case for lack of subject matter jurisdiction. 58 F.3d 106, 108-09 (4th Cir. 1995). In her complaint, the plaintiff sought to recover three separate debts of $40,000, $23,696, and $14,700 from the defendants. *Id.* at 108. After the conclusion of discovery, the district court granted partial summary judgment in the defendants' favor on the alleged debt of $40,000, which thereafter caused the maximum amount in controversy to fall below the then-existing statutory minimum of $50,000. *Id.* at 108-09. The district court, believing that § 1332 left it with "no discretion," dismissed the remaining claims for lack of subject matter jurisdiction. *Id.* at 109.

On appeal, the Fourth Circuit held that the trial court's view was erroneous. *Id.* Instead, the court held that the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, "should apply when the amount in controversy falls below the [statutory minimum] threshold, just as it does when a federal question or a diverse claim falls out of a case." *Id.* at 110. The court explained that federal law provides trial courts with discretion to retain jurisdiction over diversity cases, even when subsequent events cause the amount in controversy to fall below the statutory minimum (now set at $75,000). *Id.* at 110-12.

The *Shanaghan* court thereafter set forth a two-part analytical framework to guide a district court's exercise of discretion in cases such as this. First, courts must "look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach

the required amount." *Id.* (citing *St. Paul*, 303 U.S. at 288).  "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Id.*  This test, the court observed, "is akin to a 'well-pleaded complaint' rule." *Id.*  Second, "the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." *Id.*  In considering whether to retain jurisdiction, the following five factors are relevant:

> (1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; [and] (5) whether the case presents some significant issue of state law best decided in state court.

*Peiffer v. King Pontiac Buick GMC, Inc.*, 105 F. Supp. 2d 470, 472-73 (D. Md. 2000); *see Shanaghan*, 58 F.3d at 112 (setting forth these identical factors in narrative form).  Courts in this District routinely apply this two-part framework in analogous circumstances. *See, e.g.*, *Trust v. Prestige Annapolis, LLC*, No. 16-00544-JMC, 2017 WL 3085680, at *15-17 (D. Md. July 20, 2017); *Ecology Servs., Inc. v. GranTurk Equip., Inc.*, 443 F. Supp. 2d 756, 765-67 (D. Md. 2006); *Peiffer*, 105 F. Supp. 2d at 473-74.

Applying the first part of the *Shanaghan* framework to this case, Defendants concede that "if the original complaint is considered operative at this point for purposes of this issue, the Court would be deemed to have subject matter jurisdiction." ECF 174 at 1.  This concession is well-taken, as the Court agrees that the original Complaint satisfactorily pled an amount in controversy in excess of $75,000.

Proceeding to the second part of the *Shanaghan* analysis, this Court concludes that the five factors largely counsel in favor of retaining jurisdiction.  First, fairness and judicial economy favor this Court retaining jurisdiction.  The initial presiding United States District Judge already decided one dispositive motion, the parties have essentially finished all fact discovery, and are close to filing a second round of dispositive motions.  *See Ecology Servs.*, 443 F. Supp. 2d at 766.  To dismiss this case, and to require a state court to obtain the same level of knowledge and familiarity that this Court has obtained with its facts and complex procedural history, would constitute a significant waste of judicial resources.  Moreover, this forum is likely the fairest one for both parties.  Retaining jurisdiction affords respect for the fact that Plaintiffs are the masters of their complaint.  *See, e.g.*, *Custer v. Sweeny*, 89 F.3d 1156, 1165 (4th Cir. 1996).  Retaining jurisdiction also prevents both parties from facing suit in a potentially biased forum – Plaintiffs in Maryland state court, and Defendants in Pennsylvania state court.  *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 111-12 (1945) ("Diversity jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility to potential local bias.").

Second, Defendants make no argument, nor does the Court find, that Plaintiffs' initial request for compensatory, punitive, and special damages, and for attorneys' fees, was made in bad faith.  This factor therefore favors retaining jurisdiction.

The third factor, the relevant statute of limitations, does counsel in favor of dismissal. The Maryland Rules of Civil Procedure allow for claims dismissed from this Court for lack of subject matter jurisdiction to be filed in Maryland state court, so long as those claims (1) were timely filed in this Court under the relevant statue(s) of limitations, and (2) are filed within thirty days of this Court's order dismissing the case.  Md. Rule 2-101(c); *Peiffer*, 105 F. Supp. 2d at 473-74 (discussing this same provision).

The Court will take the final two factors together.  The fourth factor requires courts to "account for the amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction," and the fifth considers any case-specific circumstances, such as the presence of a "significant issue of state law."  *Shanaghan*, 58 F.3d at 112.  This case, which is, in a nutshell, a property boundary dispute between residential neighbors, is just three weeks from its four-year anniversary in this Court.  The case has already been through one round of dispositive motions, and the presiding District Judge's ruling on those motions has been directly challenged at least three times thus far.  *See* ECF 170 (denying Defendants' third explicit motion to overturn or otherwise amend the Court's ruling on the initial cross-motions for summary judgment).  When the case was transferred to this Court's docket in September, 2019, there were nine unique motions outstanding for adjudication.  With the assistance of United States Magistrate Judge Deborah L. Boardman, only two of those motions now remain pending.  The parties have largely completed fact discovery, and are due to propose a schedule for their second round of dispositive motions, which have the potential to bring final closure to this matter.

Thus, at this point, this Court is well-versed with the facts of this case, and the positions of the parties.  While not diminishing the importance of this case to the parties – given the extensive litigation and the  amount of attorneys' fees and costs likely expended to this point – this case is, again, a property line dispute, and the physical encroachment at issue is approximately 0.1 acres of land.  To be sure, this is a unique boundary dispute case, given that the Mason-Dixon Line represents the parties' property line, requiring this Court to determine the line's precise location.  But, as this Court explained at length in its May 26, 2020 Order, ECF 170, that question has been decided for three and a half years now, *see* ECF 22-1.  Nor is this

8

Court convinced that the answer to this central question has such extensive implications on the relationship between Maryland and Pennsylvania that it should be decided in a state court in either forum.  To dismiss this case now, and unwind all of the progress that has been made in reaching a final resolution, would be vastly inefficient for all parties involved.  The final two factors therefore counsel strongly in favor of this Court retaining jurisdiction.  *See Peiffer*, 105 F. Supp. 2d at 473 (finding that factors one, four, and five favored retaining jurisdiction because dismissal would prevent the case from being "concluded as promptly as if it remains in this Court," and noting that "the parties are entitled to as prompt a resolution as reasonably can be afforded").

In sum, while the third *Shanaghan* factor weighs in favor of dismissal, the other four factors weigh strongly in favor of this Court retaining jurisdiction over this matter.  The Court will accordingly deny Defendants' Motion to Dismiss.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 163, is DENIED. The parties will be directed to confer and provide a proposed dispositive motions briefing schedule, keeping in mind the currently scheduled trial date, on or before June 12, 2020, at 5:00 p.m.  An implementing Order follows.


Dated:  June 9, 2020                                    _____/s/_____
                                                        Stephanie A. Gallagher
                                                        United States District Judge