IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN S. MCNULTY, *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | Civil Case No. SAG-16-2426 |
| | * | |
| ROBERT A. CASERO, JR., *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On May 11, 2020, with the Court's leave, Plaintiffs John and Carolyn McNulty ("Plaintiffs") filed a Second Amended Complaint against Robert Casero and Catherine Mary Hattenburg ("Defendants"). ECF 161; *see* ECF 160. The Second Amended Complaint seeks declaratory and injunctive relief stemming from a property boundary dispute between Plaintiffs and Defendants. ECF 161, ¶¶ 41-127. The discovery period has elapsed, and Plaintiffs have filed two motions: a Motion for Summary Judgment, ECF 183; and a Motion to Partially Strike Defendants' Answer, ECF 184, 188. Defendants have opposed both motions, ECF 186, 189, and Plaintiffs replied, ECF 190, 191. Defendants have requested a hearing. ECF 186. This Court finds, however, that the factual and legal issues are adequately presented in the briefs, rendering a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Plaintiffs' Motion for Summary Judgment will be granted in part and denied in part, and the Motion to Partially Strike Defendants' Answer will be denied as moot.

## I.    FACTUAL BACKGROUND

On November 7, 1991, Plaintiffs purchased a parcel of subdivided land from James Cleveland Bates and Regina Bates in Fawn Township, York County, Pennsylvania. ECF 24-2 at

1.[1]  The southern boundary line of Plaintiffs' property is measured in relation to the Mason Dixon Line.  *Id.*  On April 26, 2010, Defendants purchased a parcel of land known as "2215 Salt Lake Road," in Harford County, Maryland, from Steven and Regina Segall.  ECF 24-1.  The northern boundary line of Plaintiffs' property is measured in relation to the Mason Dixon Line.  *Id.*  Plaintiffs' southern property boundary is coterminous with Defendants' northern property boundary.  *E.g.*, ECF 186-29.  Running east to west along that shared boundary line is Salt Lake Road.  *Id.*; *see also* ECF 186-31; ECF 186-24 (April, 2015 aerial photo of Plaintiffs' and Defendants' property).  The instant property dispute arose because Plaintiffs asserted that their southern property line extended south of Salt Lake Road, but Defendants asserted that the parties' shared property boundary (and, by extension, the Mason Dixon Line) laid within the bed of Salt Lake Road.  ECF 186-31; ECF 186-32.

Defendants' predecessors-in-title, the Stegalls, maintained a home in a different location than the home in which Defendants currently reside.  ECF 186-22 (March, 2004 aerial photo, showing the Stegalls' home); ECF 186-24 (April, 2015 aerial photo, showing Defendants' home in a different location to the southwest).  The Stegalls used a concrete driveway that directly accessed Salt Lake Road.  ECF 186-22; ECF 186-48 at 31:4-15 (C. McNulty Dep.).  Plaintiffs and the Stegalls discussed Plaintiffs' view that the Stegalls' driveway was on land encompassed by Plaintiffs' southern property boundary, but Mr. McNulty told Mr. Stegall that Mr. Stegall had permission to use the driveway.  ECF 183-5 at 107:18–111:1.  Later, however, the house that the Stegalls inhabited burned down.  ECF 186-48 at 31:1–3.

---

[1] Upon a Motion for Summary Judgment, the Court may consider, in addition to those materials cited, all "other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Sometime after Defendants acquired the land, but prior to constructing their home, Dr. Casero and Mr. McNulty discussed the location of their shared property boundary. ECF 186-27 at 35:15–36:6, 36:15–37:20. Mr. McNulty "claimed he owned property on the south side of Salt Lake Road," but Dr. Casero asserted that a survey he had showed that "the Maryland-Pennsylvania border is in the road between our two properties." *Id.* at 35:19-36:4. Even in the face of the survey Dr. Casero had, Mr. McNulty "did not agree" with Dr. Casero's assertion, and Dr. Casero likewise disagreed with Mr. McNulty. *Id.* at 37:1–11. In Dr. Casero's words, "that disagreement started there and continues to this day." *Id.* at 37:5–6.

No later than June 25, 2013, Defendants constructed a driveway on their property that directly links their newly constructed house to Salt Lake Road. ECF 186-13 (June 25, 2013 inspection report from Harford County, Maryland Government inspector); ECF 186-24; ECF 186-37 (street-level photo of Defendants' driveway). Later, in April, 2014, and again in December, 2014, Defendants twice removed a fence that existed on lands lying south of Salt Lake Road. *See, e.g.*, ECF 183-5 at 124:19-125:13 (J. McNulty Dep.) (testifying that Mr. Casero came to him and apologized for tearing down the fence in April, 2014); ECF 186-27 at 14:14-15:7, 16:15-21, 117:20-118:5 (Casero Dep.) (corroborating the April, 2014 incident; noting that the McNultys thereafter placed a second, orange, temporary fence in its place; and admitting to tearing that second fence down in December, 2014); ECF 186-35; ECF 186-36 (pictures of the old fence). Then, on April 1, 2015, Defendants executed a Confirmatory Deed to themselves, indicating that the northern border of their property "lies on and through" Salt Lake Road. ECF 18-4 at 1.

Plaintiffs filed suit against Defendants in this Court on June 28, 2016. ECF 1. Plaintiffs asserted a host of tort claims, including trespass, continuing trespass, nuisance, continuing nuisance, conversion, and slander of title, as well as claims to quiet title, for ejectment, and for a

declaratory judgment. *Id.* ¶¶ 31-116. Plaintiffs sought compensatory damages, special damages, punitive damages, attorneys' fees, injunctive relief, and declaratory relief. *Id.*

On September 3, 2016, the parties submitted a Joint Status Report to the presiding judge, United States District Judge J. Frederick Motz, requesting a scheduling conference and asking the Court to "allow for an early motion for summary judgment, prior to discovery," but indicating Plaintiffs' desire to file an Amended Complaint. ECF 7, ¶¶ 4-5. Judge Motz thereafter held a scheduling conference and issued a Scheduling Order setting both a November 2, 2016 deadline for Plaintiffs to amend their Complaint, and a November 16, 2016 deadline for Defendants to file either a "motion to dismiss or an answer and motion for summary judgment." ECF 9. Defendants filed a "Motion to Dismiss Amended Complaint and/or for Summary Judgment" on November 15, 2016. ECF 14. Plaintiffs filed a Cross Motion for Summary Judgment on December 5, 2016. ECF 17; ECF 18.

On January 5, 2017, Judge Motz issued a Memorandum Opinion ("the Opinion") granting Plaintiffs' Cross-Motion for Summary Judgment, and denying Defendants' Motion for Summary Judgment, "on the issue of liability." ECF 22-1 at 1. The Opinion addressed the parties' arguments as to the "proper placement of the Mason-Dixon line." *Id.* at 1-2. After considering the case *Maryland v. West Virginia*, 217 U.S. 1 (1910), Judge Motz concluded that the Caseros' efforts to distinguish it were not "meaningful." *Id.* at 2. Judge Motz reasoned that "Maryland has recognized the originally surveyed Mason-Dixon Line for over 250 years, and it has recognized that Salt Lake Road falls within the jurisdiction of Pennsylvania." *Id.* The Caseros moved for reconsideration of Judge Motz's Opinion, ECF 24, and to strike the Opinion, ECF 43. Judge Motz denied both motions. ECF 27 (denying the Motion for Reconsideration); ECF 54 (denying the Motion to Strike). The import of Judge Motz's ruling, this Court has explained, is that "[t]he McNultys own

the disputed portions of land that lie south of Salt Lake Road." ECF 119 at 9.  Mr. Thomas Farcht,

a licensed surveyor with over forty years of experience in his field, avers that, in accordance with

this ruling, Plaintiffs' southern property boundary is

> depicted with the bearing of S 89 degrees 49 minutes 01 seconds W from the
> southeastern corner of the McNulty property and extends 434.72' to the
> southwestern property corner of the McNulty property, as is shown on Exhibit No.
> 2 being the same as the southern boundary of the McNulty property as depicted on
> a plat entitled "Final Subdivision Plan James C. and Regina M. Bates, dated 27
> December 1990" and being the same as the southern boundary of the McNulty
> property as depicted on a plat entitled "Final Subdivision Plan for James C. Bates"
> approved by the Township on 11 February 2012.

ECF 183-1, ¶ 14; *see also* ECF 183-2; 186-8 (the December 27, 1990 Bates Subdivision Plan).

On May 11, 2020, with this Court's leave, Plaintiffs filed a Second Amended Complaint.

It asserts the following causes of action: (1) declaratory judgment, (2) ejectment, (3) quiet title, (4)

adverse possession (in the alternative), (5) trespass, (6) "continuing trespass (fence removal)," (7)

"continuing trespass (driveway)," (8) "continuing nuisance (fence removal)," (9) "continuing

nuisance (driveway)," and (10) slander of title.  ECF 161, ¶¶ 41-127.  Notably, Plaintiffs have

eliminated all claims for damages and attorneys' fees; the only remedies sought are a declaratory

judgment settling the property dispute and an injunction that requires removal of Defendants'

driveway from Plaintiffs' land. *Id.*

## II.  LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

appropriate only "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  The moving party bears the burden of

showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp.

2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th

Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving

party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III.   ANALYSIS

The claims for relief asserted in Plaintiffs' Second Amended Complaint, and addressed in their Motion, are best analyzed in the context of the type of relief sought. Plaintiffs ultimately

seek two forms of relief: (1) a declaratory judgment; and (2) two permanent injunctions. The propriety of each form of relief, and the merits of the related claims for relief, are all considered in turn.

### A.    Declaratory Judgment, Ejectment, and Quiet Title Claims

First, Plaintiffs seek the entry of a declaratory judgment that, once and for all, settles the boundary dispute between themselves and Defendants. ECF 161, ¶¶ 41-51. Plaintiffs also bring a quiet title action, seeking a declaration "(i) that Plaintiffs own fee simple title to the disputed portion of the McNulty Property south of Salt Lake Road, and (ii) that Defendants have no legal or equitable interest in the disputed portion of the McNulty Property south of Salt Lake Road." *Id.* ¶¶ 55-58. Relatedly, Plaintiffs bring an ejectment action to "recover possession of land" south of Salt Lake Road "which is subject to an[] encroachment." ECF 183 at 6.

Where an "actual controversy within its jurisdiction" exists, the federal Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (2018); *see also, e.g.*, *Hogs & Heroes Found., Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 494 (D. Md. 2016). Federal courts sitting in diversity may therefore enter declaratory judgments pursuant to § 2201 if three conditions are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted). The Declaratory Judgment Act does not require courts to issue declaratory relief; "[r]ather, a district court's decision to entertain a claim for declaratory relief is discretionary." *Aetna Cas. & Sur. Co. v. Ind-*

*Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) (per curiam); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

At the same time, however, the Fourth Circuit has held that a district court must have "good reason" to decline to entertain a declaratory judgment action." *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). This is because the Declaratory Judgment Act must "be liberally exercised to effectuate the purposes of the statute." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994). Thus, a court typically should "entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Quarles*, 92 F.2d at 325). A declaratory judgement action is appropriate here to clarify who owns the disputed tract of land on the parties' property boundary. Disagreement over this legal question is at the heart of all the subsequent disputes between the parties. A resolution will inform the parties of their rights and obligations, and will avert future controversies.

Relatedly, Plaintiffs seek to eject Defendants from the disputed property and to quiet title as to the property's true ownership. The merits of actions for ejectment and quiet title are governed by state law. *See, e.g.*, *Club Comache, Inc. v. Gov't of Virgin Islands*, 278 F.3d 250, 259 (3d Cir. 2002); *Lomp v. U.S. Mortg. Fin. Corp.*, No. WMN-13-1099, 2013 WL 6528909, at *3 (D. Md. Dec. 11, 2013). Pennsylvania Rule of Civil Procedure 1051 governs ejectment actions, and Rule 1061 governs quiet title actions. Pennsylvania courts maintain a rigid distinction between actions to quiet title and actions for ejectment. *See Siskos v. Britz*, 567 Pa. 689, 699-702 (2002). As relevant here, the Pennsylvania Supreme Court has held that "[w]hen an Action in Ejectment is

maintained in conjunction with an Action to Quiet Title, the proper course of action is for the trial

court to proceed solely on the Action in Ejectment." *Id.*  Since an ejectment action is proper here

under Pennsylvania law – given that it is undisputed that Defendants are currently possessing at

least a portion of the one-tenth of an acre, by virtue of their infringing driveway – this Court will

consider the propriety of Plaintiffs' requested relief under Pennsylvania Rule of Civil Procedure

1051.[2]  *See, e.g.*, *Brennan v. Shore Bros., Inc.*, 380 Pa. 283, 285 (1955) ("Ejectment is a possessory

action only, and can succeed only if the plaintiff is out of possession, and if he has a present right

to immediate possession.").

Here, Plaintiffs' right to relief under their declaratory relief and ejectment claims stems

from Judge Motz's January 5, 2017 ruling on the parties' first round of cross-motions for summary

judgment, finding that Plaintiffs' prevailed "on the issue of liability."   ECF 22-1 at 1.  As this

Court has repeatedly explained, this ruling meant that "[t]he McNultys own the disputed portions

of land that lie south of Salt Lake Road."  ECF 170 at 2 (emphasis omitted) (quoting ECF 119 at

8-9).  Plaintiffs have provided uncontroverted testimony that, based on that decision, Plaintiffs'

southern boundary begins at the southeastern property corner, as depicted on a plat entitled "Final

Subdivision Plan James C. and Regina M. Bates, dated 27 December 1990," runs west at a bearing

of south 89 degrees 49 minutes and 01 seconds for 434.72 feet to the southwestern property corner

of said property depicted on said plat.  ECF 183-1, ¶ 14; ECF 183-3.  Because the undisputed

evidence shows that Defendants are in possession of, and wrongfully claim title to, those same

lands, summary judgment on the declaratory relief and ejectment claims in Plaintiffs' favor is

appropriate.

---

[2] Given this, the Court's Order will reflect the dismissal of Plaintiffs' quiet title claim as moot.

Defendants' fifty-page opposition is almost entirely dedicated to relitigating the merits of Judge Motz's decision. Since this case was transferred to this docket in September, 2019, this Court has continued to adhere to Judge Motz's decision as governing the proceedings in this case, as shown most recently in this Court's Letter Order denying Defendants' Motion for Clarification of Judge Motz's Ruling, *see* ECF 170. This continued adherence is not for arbitrary or nefarious reasons, but instead stems from this Court's respect for the longstanding "law of the case" doctrine. Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)). "The doctrine was developed to provide judicial efficiency and consistency; without it a court would be asked to continuously reconsider legal conclusions it had already made at every step of the litigation." *In re Schweiger*, 587 B.R. 469, 474 (Bankr. D. Md. 2018); *see also, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues'"). The Court is certainly sympathetic to the fact that Defendants disagree with Judge Motz's ruling. But their recursive attempts to obtain reconsideration of that ruling only serve to undercut the efficacy of this doctrine. When this litigation came to this Court, there were a total of ten motions (between two separately filed cases) for adjudication, almost all of which stemmed, in some fashion, from Defendants' continued objections to Judge Motz's ruling. Nonetheless, this Court's focus remains on adjudicating the few issues left between the parties, and in that vein, the Court proceeds to Plaintiffs' remaining claims for injunctive relief.

B.      **Claims for Injunctive Relief**

Plaintiffs' Motion addresses two additional categories of tort claims contained in the Second Amended Complaint: those related to Defendants' actions in tearing down a fence on Plaintiffs' land, ECF 183-10 at 7, 9-10, and those related to the presence of Defendants' driveway on Plaintiffs' land, *id.* at 8-9.  As explained below, Plaintiffs are entitled to an injunction requiring the Defendants to remove their driveway from Plaintiffs' land, but are not entitled to a "restraining injunction."  *See id.* at 10.

1.      **Choice of Law**

In their briefs, both parties cite to both Maryland and Pennsylvania law to argue the merits of Plaintiffs' claims.  With respect to tort claims, Maryland courts typically follow the *lex doci delicti* rule.  *Erie Ins. Exchange v. Heffernan*, 399 Md. 598, 620 (2007).  This rule requires courts to apply the tort law of "the state where the wrong occurs."  *Hauch v. Connor*, 295 Md. 120, 123 (1983).  Thus, "where the events giving rise to a tort action occur in more than one State," Maryland courts must "apply the law of the State where the injury – the last event required to constitute the tort – occurred."  *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615 (2006).  Here, since the Court has determined that the disputed lands belong to Plaintiffs, and lie in Pennsylvania, Pennsylvania substantive law governs.

The parties disagree as to which law governs the Court's issuance of a permanent injunction.  Plaintiffs assert that they are entitled to a permanent injunction under Maryland, Pennsylvania, or federal law, without specifically advocating for the application of any one of the three.  ECF 183-10 at 11-16.  Defendants counter that the standard elucidated in *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), governs.  ECF 186 at 39-40.  The Fourth Circuit has explained, however, that in a diversity action, federal courts should apply substantive state law

principles governing the issuance of permanent injunctive relief. *See Lord & Taylor, LLC v. White Flint, L.P.*, 780 F.3d 211, 215 (4th Cir. 2015) (citing *Capital Tool & Mfg. Co., Inc. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988); 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2943 (3d ed. 2014)); *see also Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, No. RDB-11-1864, 2013 WL 2903285, at *3-4 (D. Md. June 13, 2013) (concluding that post-*eBay* precedent did not compel the application of the *eBay* framework to requests for permanent injunctive relief in diversity cases), *aff'd*, 594 F. App'x 798, 802 (4th Cir. 2014) (per curiam) ("[W]e . . . affirm on the reasoning of the district court as stated in its June 13, 2013 memorandum opinion . . . ."). Accordingly, this Court will apply Pennsylvania law to Plaintiffs' permanent injunction request.

### 2.   Permanent Injunction Standards

To obtain a permanent injunction under Pennsylvania law, a plaintiff "must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Kuznik v. Westmoreland Cty. Bd. of Comm'rs*, 588 Pa. 95, 117 (2006) (quoting *Harding v. Stickman*, 823 A.2d 1110, 1111 (Pa. Commw. Ct. 2003)). Unlike a preliminary injunction, however, the plaintiff "need not establish either irreparable harm or immediate relief[,] and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1078 (Pa. Super. Ct. 2014) (quoting *J.C. Ehrlich Co. v. Martin*, 979 A.2d 862, 864 (Pa. Super. Ct. 2009)).

### 3.      Claims Related to Defendants' Fence Removal

Counts VI, IX, and XI assert, respectively, that Defendants committed a trespass, continuing trespass, and a continuing nuisance by twice removing a fence that was situated on Plaintiffs' land.  ECF 161, ¶¶ 69-74; *id.* ¶¶ 75-82; *id.* ¶¶ 104-12.  One of the few points that the parties have agreed upon in this matter is the fact that the Defendants did twice remove a fence that, based upon Judge Motz's ruling regarding the parties' respective property boundaries, existed on the McNultys' land.  *See, e.g.*, ECF 183-5 at 124:19–125:13 (J. McNulty Dep.) (testifying that Mr. Casero came to him and apologized for tearing down the fence in April, 2014); ECF 186-27 at 14:14–15:7, 16:15–21, 117:20–118:5 (Casero Dep.) (corroborating the April, 2014 incident; noting that the McNultys thereafter placed a second, orange, temporary fence in its place; and admitting to tearing that second fence down in December, 2014); ECF 186-35 to -36 (pictures of the old fence).

However, even if the agreed facts do show that Defendants trespassed on Plaintiffs' land, injunctive relief is not appropriate.  *See Kramer v. Slattery*, 260 Pa. 234, 238 (1918) ("Equity will not restrain by injunction the commission of a mere, ordinary, or naked trespass . . . .")  Whether these actions further constitute a continuing trespass or continuing nuisance, summary judgment is inappropriate because Plaintiffs have failed to produce sufficient evidence showing their entitlement to the injunctive relief sought.  Plaintiffs ask the Court to enter an injunction that restrains Defendants from "entering upon the property of the Plaintiffs, or interfering with the Plaintiffs' use and enjoyment of their Property."  ECF 183-11, ¶ 4.  Plaintiffs argue that "[g]iven the history of disputes between the parties, ranging from construction of the driveway to tearing down fences," an injunction is necessary "to prevent future disputes."  ECF 183-10 at 1213.  This Court disagrees.

Plaintiffs correctly assert that permanent injunctions shall issue "if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Youst*, 94 A.3d at 1078; ECF 183-10 at 11. However, here, it is not clear that Plaintiffs are facing any future invasion of or interference with their property. Plaintiffs have not presented any evidence that Defendants intend to violate the property boundary adjudicated by this Court in the future. Defendants tore down the previous fences based on their belief that the fence was on their property. *See* ECF 186-27 at 14:14–15:7 (Casero Dep.) (explaining that he believed the fence was on his land, and noting, "I told Mr. McNulty that if I was in the wrong, I would be more than happy to replace the fence"). Additionally, the Court has significant concerns that an injunction, worded as broadly as Plaintiffs propose, would run afoul of Federal Rule of Civil Procedure 65(d)(1)(C), which requires injunctions to "describe in reasonable detail . . . the act or acts restrained or required." *See also Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013).

In sum, Plaintiffs have failed to demonstrate their entitlement to an injunction enjoining Defendants from entering Plaintiff's property as a result of the alleged trespass and nuisance claims vis-à-vis the fence removal. Therefore, summary judgment is inappropriate, and judgment will be entered in Defendants' favor.[3]

### 4.    Trespass Claim Involving Defendants' Driveway

Count X alleges that the presence of Defendants' driveway on Plaintiffs' land constitutes a continuing trespass. ECF 161, ¶¶ 82-85, 101-03. As explained below, Plaintiffs succeed on the

---

[3] Of course, entering judgment in Defendants' favor results only as a procedural consequence. Nothing in the Court's ruling should be taken as condoning Defendants' actions, especially in light of the Court's reaffirmation of the location of parties' respective property boundaries, and how that relates to the location of the two prior fences.

merits of this claim and are entitled to a permanent injunction requiring Defendants to remove the trespassing portion of their driveway.

        **i.**        **There Is No Genuine Dispute of Material Fact Regarding the Continuing Trespass of Defendants' Driveway**

Under Pennsylvania law, a plaintiff need only demonstrate that the defendant intended to commit "physical entry upon the surface of the [plaintiff's] land" to establish liability for trespass. *Jones v. Wagner*, 425 Pa. Super. 102, 109 (1993) (quoting W. Page Keeton, Prosser & Keeton on Torts (5th ed. 1984)). The defendant must simply intend to be on the land in question; there is no requirement that he specifically intend to be on *another's* land. *Kopka v. Bell Tel. Co. of Am.*, 371 Pa. 444, 450 (1952) (quoting Restatement (First) of Torts § 163 (Am. Law. Inst. 1934)). Finally, the plaintiff need not allege any harm to his land, for the harm "is not to the physical wellbeing of the land, but to the landowner's right to peaceably enjoy full, exclusive use of his property." *Jones*, 425 Pa. Super. at 102.

Pennsylvania courts adopt the First Restatement's approach to the continuing trespass doctrine. *See, e.g.*, *Sustrik v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 328 (1964); *Allegheny County v. Merrit Constr. Co.*, 309 Pa. Super. 1, 4 (1982). A continuing trespass exists where a defendant fails to "remove from land in the possession of another a structure, chattel or other thing which he has tortiously erected or placed on the land." *Merrit Constr.*, 309 Pa. Super. at 4 (quoting Restatement (First) of Torts § 161 cmt. b)). The Pennsylvania Supreme Court cautions courts to distinguish a continuing trespass from a trespass causing permanent change to the plaintiff's land: "The latter, while resulting in a continuing harm, does not subject the trespasser to liability for a continuing trespass." *Sustrik*, 431 Pa. at 328 (citing Restatement (First) of Torts § 162 cmt. d).

Here, the undisputed evidence shows that fifty-nine square feet of Defendants' driveway encroach on Plaintiffs' land. Plaintiffs have provided an affidavit from Mr. Thomas Farcht, a

licensed, registered surveyor with over forty years of experience in the field of surveying.  ECF 183-1, ¶ 6.  Mr. Farcht avers that, after having inspected Defendants' driveway and the location of Plaintiff's southern property boundary, he determined that Defendants' driveway extends onto Plaintiff's land "by 3 feet at the Western edge of the driveway's macadam paving and 2 1/2 feet at the Eastern edge of the driveway's macadam paving," resulting in a total encroachment of "approximately 59 square feet."  *Id.* ¶ 17.  While the evidence Defendants have provided may tend to demonstrate that this encroachment was made on the good-faith advice of counsel, *see generally* ECF 186-25 (Affidavit of Michael Birch, Esq.), all that is relevant here is that Defendants intended to place their driveway on that portion of land, *see Kopka*, 371 Pa. at 450.  Indeed, the evidence Defendants have provided confirms that the location of the driveway, in relation to the location of Plaintiffs' southern property boundary, is not in dispute.  *See, e.g.*, ECF 186-15 (work order from the Harford County Government, ordering Defendants to pave the driveway at issue); ECF 186-37 (picture of the driveway, with Plaintiffs' southern boundary marked in pink); ECF 186-47, ¶ 8 (Casero Aff.) (verifying that ECF 186-37 accurately depicts Defendants' driveway).

The undisputed evidence also demonstrates that Defendants' driveway trespasses in a continuing manner.  As the Superior Court of Pennsylvania has explained, a defendant's failure "to remove from the land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land."  *Jones*, 425 Pa. Super. at 111 (quoting Restatement (Second) of Torts § 161 cmt. b).  Here, Defendants readily admit that they built the infringing driveway on or before June 25, 2013.  ECF 186-47, ¶ 3; *see also* ECF 186-12 (Harford County Government inspection certificate of Defendants' construction of the driveway at issue).  Moreover, Mr. Farcht has averred that the driveway has not permanently damaged Plaintiffs' land.

16

ECF 183-1, ¶ 18. Instead, Mr. Farcht states that the driveway is "easily removable," and that removal can be accomplished in about one day's work, at a cost of $2770. *Id.* Defendants have provided no evidence to the contrary. Because Defendants' driveway has continuously trespassed on Plaintiffs' land since June, 2013, and the land is not permanently damaged as a result, this Court finds, as a matter of law, that Defendants' driveway constitutes a continuing trespass.

### ii.     Defendants Do Not Have a Prescriptive Easement

Following the Second Restatement closely, the *Jones v. Wagner* court noted that one cannot be liable for continuing trespass if he has gained an easement by prescription over the land at issue. 425 Pa. Super at 111 n.3 (discussing Restatement (Second) of Torts § 161 cmt. d). Indeed, in their Answer, Defendants have asserted that they are entitled to a prescriptive easement, *see* ECF 162, Affirm. Defense No. 18, an assertion which Plaintiffs now seek to strike, *see* ECF 188 at 3.

"A prescriptive easement is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of 21 years." *McNaughton Props., LP v. Barr*, 981 A.2d 222, 225 n.2 (Pa. Super. Ct. 2009) (citing *Waltimyer v. Smith*, 383 Pa. Super. 291, 296 (1989)). Notably, the party's use of the claimed easement must be adverse for the entire twenty-one years. *See Waltimyer*, 383 Pa. Super. at 295 ("A use based upon permission cannot ripen into a prescriptive right unless the owner of the land is given clear notice that the character of the use has changed from a permissive use to an adverse use, and the adverse use then continues for the full prescriptive period."). If adverse use is demonstrated for the entire twenty-one year period, then the prescriptive easement that results goes only so far as "[t]he scope of the use during prescriptive period . . . except with respect to a reasonable evolution of the use which is not unduly burdensome" on the landowner against whom

the prescriptive easement is imposed.  *Id.* at 294 (citing *Hash v. Sofinowski*, 337 Pa. Super. 451, 444-45 (1985)).

Here, Defendants fail to create a genuine issue of material fact as to their entitlement to a prescriptive easement.  Defendants have only owned their land since April, 2010.  ECF 186-11. Thus, to satisfy the twenty-one-year period required to obtain a prescriptive easement, Defendants must rely on a period of adverse use by their predecessors-in-title, the Stegalls.

At his deposition, Mr. McNulty testified that the Stegalls used a concrete driveway that also infringed on the McNultys' land, but Mr. McNulty assented to the Stegalls' use of that driveway, notwithstanding the infringement, from the time the Stegalls first moved in:

| | |
|---|---|
| MR. COLLINS: | Tell me the facts of this alleged easement that you granted [to the Stegalls]. |
| MS. MILLER: | Objection.  Calls for a legal conclusion. |
| MR. MCNULTY: | I would just call it an agreement.  And it was based on a verbal conversation that we had at the edge of the road.  I mean, right after he moved in.  As a matter of fact, it seems to me I was driving that big tractor we discussed up the hill maintaining the edge of the road. |
| MR. COLLINS: | And what happened? |
| MR. MCNULTY: | He just – that's a good question.  As far as I recollect – this is just going – because this was – when did Steve [Stegall] purchase that property?  After Edith died.  The driveway was there, but she never used it because she couldn't drive.<br><br>So let's see.  After she passed away, Steve bought the property.  We had the discussion.  And he was – well, he was actually admiring my tractor just because it's a large tractor. And he made several comments about maintaining the edge of the road there**.  And [he] asked me about where he was parking.** |
| MR. COLLINS: | And you said? |
| MR. MCNULTY: | And **I said that it was perfectly fine with me.** |

MR. COLLINS:      For him to what?

MR. MCNULTY:      **Park on that spot.**

MR. COLLINS:      **Where was that spot?**

MR. MCNULTY:      **Right at the edge of the road right where he was parked.**

MR. COLLINS:      Okay.

MR. MCNULTY:      And it was basically just a pile of gravel that allowed him to walk to the house.  I mean, it was only feet off the road.  15 feet maybe.  20.

MR. COLLINS:      Okay.  And did you discuss where the property line was?

MR. MCNULTY:      He acknowledged that the road was – I don't want to say he said the road was in Pennsylvania.  But he liked that I would trim along the edge of the road.  Put it that way. . . .

MR. COLLINS:      Okay.  Did you ever tell him that he could not have access to Salt Lake Road?

MR. MCNULTY:      I did not.

MR. COLLINS:      Why not?

MR. MCNULTY:      Why would I?

MR. COLLINS:      Cause [sic] he would be trespassing on your property if he did, right?

MR. MCNULTY:      He didn't claim to own any of it.

MR. COLLINS:      Okay.  **But he would be trespassing on your property to gain access to Salt Lake Road according to you, right?**

MR. MCNULTY:      **That's true, he would have.**

MR. COLLINS:      **Did you tell him that?**

MR. MCNULTY:      **I didn't tell him he was trespassing.  I told him it was okay that he could use that space.**  I didn't – I don't want to say I didn't care.  He didn't try to take the property away from me.

19

ECF 183-5 at 107:18–111:1 (emphasis added).

Defendants have proffered no facts to rebut Mr. McNulty's testimony. This undisputed testimony, even when read in a light most favorable to Defendants, leads to the inescapable conclusion that Defendants have no prescriptive easement where their driveway currently lies. As an initial matter, as previously noted, the driveway or parking area the Stegalls used was in a different location than the one currently used by Defendants. *Compare* ECF 186-23 (aerial photograph of Defendants' property in April, 2008, showing the location of the old driveway), *with* ECF 186-24 (aerial photograph of Defendants' property in 2015, showing (a) the location of the new, infringing driveway, and (b) grass overgrowing the area where the driveway used to be). Even (tenuously) assuming *arguendo* that Defendants' construction of the new, infringing driveway is a reasonable evolution of the Stegalls' prior use, the Stegalls' use of the driveway was not adverse to Plaintiffs because Plaintiffs expressly assented to it.

In *Waltimyer v. Smith*, the Superior Court of Pennsylvania explained that where a landowner grants another permission to use his land for a specific purpose, a personal, revocable license is created. 383 Pa. Super. at 296. As to that licensee, the court explained, his use of the true owner's land remains permissive, unless and until he gives the true owner notice that he is adversely using the land. *Id.* Successors-in-interest to the licensee, however, do not inherit the permissive nature of their predecessor's use. *Id.* As the court explained, "the license created by the original grant of permission terminates *by operation of law* upon alienation," thereby allowing the successor-in-interest to immediately begin an adverse period of use of the true owner's land. *Id.* The court noted, however, that the successor-in-interest *could not* tack on his predecessor's period of permissive use to his period of adverse use, "unless, and only to the extent that, the prior

20

permissive use had been transformed into an adverse use by appropriate notice to the owner of the land." *Id.* at 296 n.1.

As noted, the undisputed facts show that the Stegalls had Plaintiffs' permission to use the then-existing driveway. Defendants proffer no evidence to create a genuine issue of material fact that, at some point in time, the Stegalls' use of the driveway became adverse. Without any evidence of an adverse use by the Stegalls, all the Defendants have is their own seven-year period of adverse use (or three-year period, when measured from the time the driveway was built to the time Plaintiffs initiated this suit). *See* ECF 186-12. This falls well short of the required twenty-one-year period required under Pennsylvania law. Accordingly, as a matter of law, Defendants fail to establish their entitlement to a prescriptive easement. *See Waltimyer*, 383 Pa Super. at 294-96.

### iii.    Defendants Are Not Entitled to an Easement by Necessity

Defendants also appear to argue in their Opposition to Plaintiffs' Motion to Strike that, as asserted in the Answer to the Second Amended Complaint, they are entitled to an easement by necessity, ECF 189 at 6-8, and therefore are not trespassing. This argument, however, does not appear in Defendants' opposition to Plaintiffs' Motion for Summary Judgment. *See generally* ECF 186. It may be that Defendants' failure to raise the argument in opposition to the Motion for Summary Judgment means that the issue is not properly before the Court. *See Ross*, 759 F.2d at 364 ("[W]hen a motion for summary judgment is made and supported as provided in Rule 6, the nonmoving party must produce 'specific facts showing that there is a genuine issue for trial,' rather than resting upon the bald assertions of his pleadings." (quoting Fed. R. Civ. P. 56(e))).

Even assuming an easement by necessity contention is properly before the Court, Defendants' case for one is fatally flawed. Pennsylvania courts have set forth three "fundamental requirements" for an easement by necessity:

> (1) The titles to the alleged dominant and servient properties must have been held by one person.
>
> (2) This unity of title must have been severed by a conveyance of one of the tracts.
>
> (3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

*Phillippi v. Knotter*, 748 A.2d 757, 760 (Pa. Super. Ct. 2000). Defendants' claim fails at the first step of the inquiry. The chains of title for both Plaintiffs' and Defendants' properties, submitted by the Defendants, fail to demonstrate that Plaintiffs' and Defendants' parcels were ever commonly owned by a single grantor. *See* ECF 186-2 to -11. Defendants' attempt to obtain an easement by necessity by operation of Judge Motz's ruling, *see* ECF 189 at 6-8, is meritless. Without prior common ownership, Defendants are not entitled to an easement by necessity, as a matter of law. *Phillippi*, 748 A.2d at 760; *see also Bodman v. Bodman*, 456 Pa. 4412, 414 (1974) ("An easement by necessity may be created when *after severance from adjoining property*, a piece of land is without access to a public highway." (emphasis added)).

Thus, Defendants have placed their driveway on Plaintiffs' property and do not have an easement to do so. Therefore, there is no material issue of fact concerning the continuing trespass of Defendants' driveway, and Plaintiffs are entitled to judgment as a matter of law.

> #### iv.   Pennsylvania Law Entitles Plaintiffs to Pursue Equitable Relief to Abate a Continuing Trespass

Defendants conclusorily assert, in their Opposition, that Plaintiffs are not suffering any "irreparable injury," and that they have failed to show that their legal remedies are inadequate.

ECF 186 at 40.  Both contentions fail.  First, as noted above, Pennsylvania law does not require a plaintiff to prove irreparable harm when seeking a permanent injunction.  *Youst*, 94 A.3d at 1078. In fact, "[i]t is not suggested anywhere that a showing of harm is a prerequisite to recovering in trespass."  *Jones*, 425 Pa. Super. at 111.

In any event, "[i]t is hornbook law that a Court of Equity possesses jurisdiction to enjoin repeated trespasses on land."  *Gardner v. County of Allegheny*, 382 Pa. 88, 102 (1955); *see also, e.g.*, *Tri-Cities Water Co. v. City of Monessen*, 313 Pa. 83, 85 (1933) ("There is no doubt equity has power to grant a restraining order preventing actual or threatened trespasses of a continuing and permanent character." (citation omitted)); *Keppel v. Lehigh Coal & Navigation Co.*, 200 Pa. 649, 652 (1901) ("It is not to be doubted that an injunction is the appropriate remedy for the prevention of trespasses and nuisances which, by reason of the persistency with which they are repeated, threaten to become of a permanent nature.").  Indeed, in an analogous case dealing with tree branches that protruded onto an adjacent neighbor's property, thereby constituting a trespass, the Superior Court of Pennsylvania concluded that Pennsylvania law allows the aggrieved landowner "on a trespass theory, [to] see equitable relief compelling the trespassing neighbor to remove the trees to the extent of the encroachment *and* seek appropriate incidental and consequential damages."  *Jones*, 425 Pa. Super. at 112.  The court explained that aggrieved landowners must be allowed to use "every available remedial avenue in an effort to protect the incidents of land ownership," including the pursuit of equitable relief.  *Id.* at 111-12.  "Anything less," the court observed, "is a travesty."  *Id.* at 112.

In *Dodson v. Brown*, the Superior Court held that it is no defense to a claim for an injunction that the landowner may be compensated in damages:

> The appellant's title is clear.  The occupation of the strip of land by the appellee is an actual appropriation of the appellant's ground, and if continued will ripen into a

complete title. . . . There is left in it no option but to enforce the law.  The question of expense or damage cannot be considered.  The aggrieved property owner's right is absolute.  However hard his acts might be regarded, he asks the court for the enforcement of a legal right of a positive character with respect to land which it is conceded was wrongfully taken from him.  He is entitled to a decree.  The rule in such case is founded on sound reason.  If damages may be substituted for the land, it will amount to an open invitation to those so inclined to follow a similar course and thus secure valuable property rights.  The amount of land involved does not change the situation. Here is a wrongful invasion of a positive right to real property. The court should not be asked to declare in each instance what amount of land should be settled for in damages and what should come under the rule.

70 Pa. Super. 359, 360-61 (1918).  Even over one hundred years later, this reasoning applies with equal force in this case.  Damages alone are inadequate to protect Plaintiffs' property rights, and Pennsylvania law is clear that they may seek an injunction to vindicate those rights.

> **v.    Any Hardship that Defendants Suffer from an Injunction Is Legally Irrelevant**

Next, Defendants argue that the Court must consider the "balance of hardships," and that under that inquiry, "it is clear that allowing the McNultys to build a fence at the end of the Caseros' driveway, or otherwise prohibit the Caseros from using their driveway, would cause far more harm to the Caseros than the benefit, if any, accorded to the McNultys."  ECF 186 at 40; *see also id.* at 42-45.  Defendants urge that "[t]he absurdity of this situation cannot be ignored." *Id.* at 50.  Even reading the undisputed facts in Defendants' favor, their argument fails as a matter of law.

Simply put, in a case like this, Pennsylvania courts sitting in equity find the balance of the hardships irrelevant.   One of the earliest, yet most poignant, examples comes from the 1892 decision of the Supreme Court of Pennsylvania in *Walters v. McElroy*, 151 Pa. 549, 554 (1892). In *Walters*, the plaintiff sued individuals involved with a mining company for trespassing on his land. *Id.* at 554.  The defendants "had entered and made a drift through and under his land into the coal in adjoining lands, and laid down a tramway therein," and were also "carrying coal from the adjoining lands through and over his land, depositing thereon dirt and debris from mines in

adjoining lands, and draining water from the said mines upon his land." *Id.*  The plaintiff's complaint was dismissed in the lower courts. *Id.* at 558.

On appeal, the Pennsylvania Supreme Court reversed that dismissal, and ordered that a "perpetual injunction" be issued in the plaintiff's favor, finding that the plaintiff was "clearly entitled" to it. *Id.* at 554, 558.  As relevant here, the defendants argued that an injunction should not be issued, because their mining operations would be "paralyzed" by the injunction, as compared to the minor cost to the plaintiff. *Id.* at 557.  The Pennsylvania Supreme Court rejected this argument:

> And as to the principle invoked, that a chancellor will refuse to enjoin when greater injury will result from granting than from refusing an injunction, it is enough to observe that it has no application where the act complained of is in itself, as well as in its incidents, tortious.  In such case it cannot be said that injury would result from an injunction, for no man can complain that he is injured by being prevented from doing, to the hurt of another, that which he has no right to do.  Nor can it make the slightest difference that the plaintiff's property is of insignificant value to him, as compared with the advantages that would accrue to the defendants from its occupation.

*Id.* at 557-58.

Time and again, Pennsylvania courts have upheld this notion, and have refused to consider the balance of the hardships in continuing trespass cases.  *See, e.g.*, *Greyhound Lines, Inc. v. Peter Pan Bus Lines, Inc.*, 845 F. Supp. 295, 302 (E.D. Pa. 1994) ("There is no contention by the defendant, nor could there be, that the defendant would be harmed by an injunction to a greater extent than the plaintiff would be were the injunction not issued.  [There is] no right to benefit from illegal trespass."); *Stuart v. Gimbel Bros.*, 285 Pa. 102, 106-07 (1926); *Sullivan v. Jones & Laughlin Steel Co.*, 208 Pa. 540, 554-55 (1904) (quoting extensively from *Walters*, 151 Pa. at 557-58, and observing, "There can be no balancing of conveniences when such balancing involves the preservation of an established right . . . ."); *Evans v. Reading Chem. Fertilizing Co.*, 28 A. 702,

709, 711 (Pa. 1894) (per curiam) (summarily affirming the lower court, which observed that no case "can be authority for the proposition that equity, a case for its cognizance being otherwise made out, will refuse to protect a man in the possession and enjoyment of his property because that right is less valuable to him than the power to destroy it may be to his neighbor or to the public"); *cf. Bartokowski v. Ramondo*, 219 A.3d 1083, 1095 (Pa. 2019) ("All property owners are presumptively entitled to the quiet use and enjoyment of their entire properties; such rights are inherent to our understanding of property ownership.").

While not cited by Defendants, there appear to be some cases in which Pennsylvania courts consider the hardships that an injunction will impose on a trespassing defendant. In *Moyerman v. Glanzberg*, for instance, the Pennsylvania Supreme Court upheld a chancellor's refusal to issue an injunction, even though the defendant's dwelling encroached by fourteen inches onto the plaintiff's driveway, because "the encroachment was the result of an unintentional mistake rather than a willful and intentional trespass." 391 Pa. 387, 394-95 (1958). In the original subdivision plan approved by the Township Commissioners, the lot in question had a frontage of 105.38 feet. *Id.* at 394. Plaintiffs, the Moyermans, had owned both this lot and the adjoining property. *Id.* They decided, without notice to or approval of the Township Commissioners, to convey only a portion of the original lot, with a frontage of only 80.38 feet, to the Glanzbergs. *Id.* The Glanzbergs (who were apparently acting as straw parties for the defendant, Goodman) conveyed the land to Goodman. *Id.* at 389. Goodman, however, was given a plan which showed the lot conveyed to him with the original frontage of 105.38 feet. *Id.* at 394. He applied for and was granted a building permit which conformed to these dimensions. *Id.* Goodman subsequently built a dwelling that encroached on the plaintiffs' property by 14 inches. *Id.* Under these circumstances, where Goodman had no knowledge of the mistake leading to the trespass, the Pennsylvania Supreme

Court explained that the hardships he would incur – having to tear down a dwelling that was substantially complete – outweighed the harm that the Moyermans would suffer, despite their superior title. *Id.* at 392-95. The court noted, however, that had Goodman's trespass been "tortious or in bad faith," or if Goodman had "intentionally take[n] a chance" that the property was not his own, then the trial court should not have hesitated to grant injunctive relief. *Id.* at 393 (quoting *Ventresca v. Ventresca*, 182 Pa. Super. 248, 253 (1956)).

   *Moyerman*, however, is inapposite here, because there is no evidence sufficient to create a genuine dispute as to Defendants' state of mind. Unlike the defendant in *Moyerman*, who had no reason to know of his title defect when applying for his building permit, Dr. Casero's own testimony indicates that before he and Ms. Hattenburg built the driveway at issue, they were aware that Plaintiffs strongly disagreed with their interpretation of the parties' shared property boundary, and that Plaintiffs had a survey to support their position. ECF 186-27 at 35:15-36:6, 36:15-37:20. Notwithstanding this, Defendants chose to build their driveway in its current location in June, 2013. ECF 186-13. While Defendants do provide evidence that might suggest that their position regarding the position of their northern property border was not unreasonable, *see* ECF 186-25 (Birch Aff.), Dr. Casero admitted that he did not consult any attorney regarding this matter until the "spring of 2014" – *after* Defendants had already once removed a fence from the disputed portions of the land south of Salt Lake Road, ECF 186-27 at 13:4-13, 14:4-16:9, and long after the driveway was erected, *see* ECF 186-13. In other words, Defendants exercised two significant acts of domain over the disputed lands, before ever consulting with a lawyer to confirm that their actions were justified.

   At minimum, these undisputed facts demonstrate that Defendants knew that the land upon which they sought to place a driveway was in dispute in June, 2013, but they took a chance, and

decided to move forward with the construction.  Under these facts, injunctive relief is warranted, regardless of any harm imposed on Defendants. *See Baugh v. Bergdoll*, 227 Pa. 420, 422-23 (1910) (reversing lower court decision not to grant an injunction where the defendant's six-inch encroachment arguably did not interfere with plaintiff's use and noting "[t]he obvious effect of the decree entered, if permitted to stand, would be to compel the appellants to submit to a divestiture of title simply for the accommodation of the appellees, and accept in return whatever amount a jury might determine to be compensatory damages").

Based on this conclusion, the Court need not determine whether a genuine issue of fact exists as to Defendants' ability to access Salt Lake Road without their current, infringing driveway. However, two observations are noteworthy.

First, Defendants have contended, both in their Opposition and in this litigation generally, that enjoining them from using their current driveway would landlock them, because it is not clear that Harford County Government officials would allow them to build a bridge over the stream that exists on their property. *See, e.g.*, ECF 186 at 50 ("If the McNulty[s'] interpretation of Judge Motz's order is upheld, the Caseros stand to lose reasonable access to their land.  They may have to relocate their driveway across a flood plain and, possibly, build a bridge across a stream (Ex. 13; 14).  It is not at all clear that Harford County will allow them to undertake such a modification of their driveway (Ex. 14).").  The referenced exhibits provide speculative support for this notion, at best.  Exhibit 13 (docketed as ECF 186-15) is a one-page plat showing Defendants' Stormwater Management Plan.  Exhibit 14 (docketed as ECF 186-16) is a stormwater management inspection conducted by Harford County, ordering Defendants to pave their driveway (which used to be in gravel form) due to the runoff of gravel caused by storms.  In no way does either exhibit create a genuine issue of fact as to Harford County's approval, or disapproval, of a bridge built across the

stream on Defendants' property. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) (explaining that the party opposing summary judgment "must produce '*specific facts*' showing that there is a genuine issue for trial," because "[g]enuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice" (emphasis added)).

Second, it does not appear to the Court that Defendants' only option for accessing Salt Lake Road is to build a bridge over a stream in a wooded area on their property that has allegedly been designated as a "flood plain." *E.g.*, ECF 186-47, ¶ 5. The Court has reviewed the videos that Defendants have submitted, exhibits 49 and 50 to their Opposition. Both of those videos are walk-throughs of Salt Lake Road, where Defendants' northern property boundary and Plaintiffs' southern property boundary meet. As the videographer walks from west to east, one can see the pink, dotted line demarcating the location of Plaintiffs' southern property boundary, as determined in Part III.A., *supra*. Notably, it appears that the pink dotted line intersects with Salt Lake Road at or around the area in which the Stegalls' old driveway used to be. If this is the case – that the old driveway is totally within Defendants' northern property boundary – then it does not seem that Defendants would have difficulty accessing Salt Lake Road using that location. In fact, in a prior status hearing in this case before United States District Judge George L. Russell, III, Plaintiffs' counsel represented to the Court, and to Defendants, that their view was that the old driveway (or, as counsel described it, a "cement parking pad") did not, in fact, infringe on Plaintiffs' property:

> MS. MILLER: There was an existing driveway on a portion of [the property on which the Stegalls' home resided] that led to Salt Lake Road that did not encroach upon the McNultys' property.
>
> THE COURT: Oh, so there was a driveway that didn't encroach upon the McNultys' property, gotcha.
>
> MS. MILLER: That's correct.
>
> . . .

29

| MS. MILLER: | What [Defense] Counsel is talking about is there was a small parking pad, a cement parking pad on the end of the Caseros' property next to Salt Lake Road. It was not a driveway, it was a pad. And the McNultys gave the previous owners license to use that pad. Now that pad has long been grown over and as never at issue or an option for the Caseros. . . . |
| THE COURT: | Is that parking pad an option now? |
| MS. MILLER: | The parking pad has been long grown over. |
| THE COURT: | You could take a weed whacker, whatever, knock things down; is there a problem with the use of the parking pad? |
| MS. MILLER: | Two years ago, it could have been an option. |

ECF 92 at 24:1–6, 26:16–27:6. After clarifying his thought process, Judge Russell asked Plaintiffs' counsel if Plaintiffs would be amenable to allowing Defendant to use the old parking "pad," if the infringing driveway was removed. *Id.* at 27:17–20. Counsel responded, "The McNultys have always been receptive to a solution like that. Always." *Id.* at 27:22–23.

These observations notwithstanding, on the current record, Pennsylvania law bars consideration of the hardships that a defendant may suffer from the entry of an injunction that requires him to remove a trespassing structure. As such, Plaintiffs have satisfied the mandatory prerequisites for the issuance of a permanent injunction under Pennsylvania law.

### vi. The Existence of a Public Right-of-Way over Salt Lake Road Does Not Preclude Plaintiffs from Obtaining Relief

Next, Defendants rely on Section 2307 of the Second Class Township Code, 53 Pa. Cons. Stat. § 67307, for the proposition that Plaintiffs are not entitled to their requested injunctive relief. ECF 186 at 33-36. Citing no case law, they argue that Section 2307's creation of a thirty-three foot right-of-way over all public roads means that Plaintiffs cannot exclude *anyone* from exercising dominion or control over any lands within those thirty-three feet, even if the Township has not

30

utilized that entire thirty-three feet for the public's use. *Id.* Even with the benefit of all favorable

factual inferences, Defendants' argument fails.

Pennsylvania law affords three methods for the establishment of a public road. *See Steward

v. Watkins*, 427 Pa. 557, 558-59 (1967). As relevant here, Section 2307 of the Second Class

Township Code is one of those methods. It provides:

> Every road which has been used for public travel and maintained and kept in repair
> by the township for a period of at least twenty-one years is a public road having a
> right-of-way of thirty-three feet even though there is no public record of the laying
> out or dedication for public use of the road.

53 Pa. Cons. Stat. § 67307(a). Still, even if Salt Lake Road is conclusively a public road, the right-

of-way does not extinguish all of Plaintiffs' rights regarding that portion of their property.

Though not binding on any court, the decision of the Commonwealth Court of

Pennsylvania in *Einhaus v. Fawn Township* is persuasive. In that case, Fawn Township and one

of its residents, Einhaus, disagreed as to the width of the right-of-way that was established for Salt

Lake Road. No. 642 C.D.2015, 2016 WL 3196696, at *1 (Pa. Commw. Ct. June 9, 2016).

Although not made specifically clear in the court's opinion, it appears that Einhaus used self-help

measures, including "placing an iron rebar pipe within the right of way," to prevent Fawn

Township from taking actions in relation to Salt Lake Road on portions of his land that fell outside

of the 25-foot right of way noted in the 1974 subdivision plan. *Id.* at *2.

On appeal, the Commonwealth Court was not concerned with whether Salt Lake Road was

a public road; that notion, the court found, was "confirmed . . . long ago." *Id.* at *2 n.5. Instead,

the court considered whether the lower court properly held that Fawn Township did not trespass

on Einhaus's land. *Id.* at *2-3. The court affirmed the lower court's holding. *Id.* at *3. It explained

that Section 2307 authorized the Township to widen Salt Lake Road to provide for a thirty-three-

foot right of way. *Id.* Because the Township properly acted within its eminent domain authority

to appropriate Einhaus's private property to "establish[] and maintain[] a public road with a right of way of 33 feet," the Township could not be liable for trespass. *Id.*

The court rejected, however, the Township's argument that it already owned the land encompassed by the thirty-three-foot right-of-way by operation of Section 2307. *Id.* at *2. The court explained:

> While the General Assembly may by statute determine the width of public roads throughout the Commonwealth, the General Assembly may not take private land by legislative fiat; the Township's argument to the contrary is simply erroneous and runs afoul of fundamental constitutional principles. Section 2307 of the Code is addressed to second class townships tasked with establishing and maintaining public roads. Section 2307 of the Code mandates the duty second class townships have to provide a 33 foot right of way for the public traveling on public roads and in doing so, grants second class townships the authority to perform the acts necessary to carry out this duty. *Section 2307 of the Code does not extinguish the rights of private landowners.*

*Id.* (emphasis added). Thus, the court passed no judgment on any possible remedy Einhaus may have elected to pursue under Pennsylvania's Eminent Domain Code. *Id.* In a subsequent decision, the Commonwealth Court relied on *Einhaus* for the notion that a landowner may pursue a remedy under Pennsylvania's Eminent Domain Code, because a township's acquisition of a public road existing on private property might constitute a de facto condemnation. *Dysert v. Robinson Township, Washington County*, No. 260 C.D. 2019, 2020 WL 1130764, at *4-5 (Pa. Commw. Ct. Mar. 9, 2020).

While there are no eminent domain issues presented in this case, the logic of *Einhaus* and *Dysert* apply with the same import here. According to Mr. Birch, Defendants' former lawyer, "the one-tenth of an acre identified by Mr. Farcht" as being Plaintiffs' land below Salt Lake Road "is all within that [thirty-three foot] right of way and is subject to being paved." ECF 186-25, ¶ 15. Based on this, Defendants argue that Plaintiffs "have no right to expect that the portion of the Caseros' driveway that allegedly falls on their land would not be paved or used by the public."

ECF 186 at 36. This is the functional equivalent of Fawn Township's argument in *Einhaus*, which the court rejected, that Section 2307 automatically grants the Township full title to the entire thirty-three-foot swath of land along which a public road runs. *See* 2016 WL 3196696, at *2. Again, "Section 2307 of the Code does not extinguish the rights of private landowners." *Id.* Even granting Defendants the reasonable inference that all of Plaintiffs' land south of Salt Lake Road falls within the right-of-way, and may be paved at some time, it remains Plaintiffs' land, unless and until Fawn Township exercises its eminent domain powers to widen Salt Lake Road. *See id.* at *2-3. As such, Plaintiffs may exercise the full bundle of rights that comes with ownership of that one-tenth of an acre, including excluding others from trespassing on it. Thus, Section 2307 does not bar Plaintiffs' instant claim for injunctive relief.

### vii.   Plaintiffs' Request for Injunctive Relief Is Not Barred by Laches

Finally, Defendants assert that Plaintiffs' claims requesting an injunction requiring Defendants to remove their driveway are barred by the doctrine of laches. ECF 186 at 42. In general terms, the doctrine of laches precludes a plaintiff from obtaining equitable relief where his failure to timely file suit prejudices the defendant. *Commonwealth ex rel. Pa. Attorney Gen. Corbett v. Griffin*, 596 Pa. 549, 563 (2008); *see also Siegel v. Engstrom*, 427 Pa. 381, 386 (1967)). Pennsylvania courts will apply the doctrine of laches where there is (1) "a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude," (2) no "compelling reason" for plaintiff's delay in bringing suit, and (3) "actual prejudice to the defendant" caused by the delay. *Captline v. County of Allegheny*, 553 Pa. 92, 95 (1998) (quoting *Jacobs v. Halloran*, 551 Pa. 350, 358 (1998)). Laches is an affirmative defense, and therefore "the burden of proof is on the defendant . . . to demonstrate unreasonable delay and prejudice. *Griffin*, 596 Pa. at 563.

Defendants argue that Plaintiffs' delay in initiating suit was unreasonable, given that Defendants' driveway was installed, at latest, on June 25, 2013. ECF 186 at 42. The instant suit, however, was filed on June 28, 2016. *Id.* Because the "most analogous statute of limitations" in Maryland is three years, Defendants argue, this Court "must dismiss the case." *Id.* Contrary to Defendant's assertion, "the doctrine of laches does not depend on a mechanical passage of time." *In re Estate of Moskowitz*, 115 A.3d 372, 380 (Pa. Super. Ct. 2015).

To begin, Defendants, without explanation, ignore the first suit the McNultys filed in the United States District Court of the Middle District of Pennsylvania in June, 2015. *See McNulty v. Casero*, No. 1:2015cv01263 (M.D. Pa. filed June 29, 2015).[4] Accordingly, the relevant time period is only two, not three, years. Moreover, the expiration of a statute of limitations is not the *sine qua non* of a laches defense under Pennsylvania law. While laches generally "follows the statute of limitations," those statutes "are not controlling in equity, but only provide guidance in determining the reasonableness of any delay." *United Nat'l Ins. Co. v. J.H. France Refractories Co.*, 542 Pa. 432, 440 (1995) (internal quotations omitted) (quoting *Silver v. Korr*, 392 Pa. 26, 30 (1958) and *Kay v. Kay*, 460 Pa. 680, 685 (1975)).

Even assuming a two-year delay is somehow unreasonable, Defendants have not argued that they have been prejudiced by this delay, let alone produced enough evidence to create a genuine issue of material fact. *See* ECF 186 at 42. The type of evidence sufficient to establish prejudice includes "establishing that a witness has died or become unavailable, that substantiating

---

[4] At the summary judgment stage, the Court may consider matters over which it may take judicial notice. *Wheelabrator Balt., L.P. v. Mayor & City Council of Baltimore*, No. GLR-19-1264, 2020 WL 1491409, at *5 (D. Md. Mar. 27, 2020); *see* Fed. R. Evid. 201. "The most frequent use of judicial notice . . . is in noticing the content of court records." *Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977)).

records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims." *Commonwealth ex rel. Baldwin v. Richard*, 561 Pa. 489, 496 (2000). Defendants have produced nothing to show that any witnesses or evidence has been lost. Moreover, there is no evidence that Defendants reasonably could have believed that Plaintiffs were going to waive their claims during the two-year period before suit. Dr. Casero testified that the parties have openly disagreed on the proper location of their shared boundary line since before the Defendants constructed their current home and driveway, and do so "to this day." ECF 186-27 at 36:18 to 37:20. In any event, there is no evidence that Defendants changed their position during this two-year period, vis-à-vis the driveway. *See A.M.M. v. Pa. State Police*, 194 A.3d 1114, 1118 (Pa. Super. Ct. 2018) ("[T]he sort of prejudice required to raise the defense of laches is some *changed* condition of the parties which occurs *during* the period of, and *in reliance on*, the delay." (alteration in original) (emphasis added) (quoting *Sprague v. Casey*, 520 Pa. 38, 46 (1988)). The only actions Defendants ever took during that period were keeping the driveway maintained, and paving it at the direction of the Harford County Government. *See* ECF 186-16. Neither of these actions, however, relied on Plaintiffs' delay in initiating suit. Accordingly, Defendants' laches defense fails as a matter of law.

In sum, Plaintiffs have produced sufficient evidence to demonstrate their entitlement to an injunction requiring Defendants to remove the infringing portion of their driveway. Defendants, in their opposition, fail to produce sufficient evidence to create any genuine disputes of material fact regarding Plaintiffs' requested relief and fail to show they could prevail on any affirmative defense. Therefore, summary judgment will be entered in Plaintiffs' favor, in accordance with the analysis above.

**C.      Plaintiffs' Motion to Partially Strike Defendants' Answer is Moot**

Plaintiffs moved to strike three affirmative defenses: (1) that Defendants are entitled to an easement by prescription; (2) that Defendants are entitled to an easement by necessity; and (3) that Defendants are entitled to gain access to Salt Lake Road pursuant to Code Section 2307.  ECF 188 at 1-4.  Because, as described above, Defendants have failed to create genuine fact issues as to their entitlement to any of these defenses, Plaintiffs' motion to strike will be denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment, ECF 183, is GRANTED IN PART and DENIED IN PART.  Plaintiffs' Partial Motion to Strike Affirmative Defenses, ECF 184, is DENIED AS MOOT.  A separate Order follows, which will include scheduling of a telephonic hearing to discuss remaining steps in this litigation, including the timing and contents of the appropriate injunction, and the appropriate disposition of the remaining causes of action.


Dated:  August 14, 2020                                        _____/s/_____
                                                               Stephanie A. Gallagher
                                                               United States District Judge